# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

Case No. 21-12428-GG; 21-12439-GG (Consolidated)

MSPA CLAIMS 1, LLC,
*Plaintiff/Appellant*,

v.

COVINGTON SPECIALTY INSURANCE COMPANY,
*Defendant/Appellee*

MSP RECOVERY CLAIMS, SERIES LLC,
*Plaintiff/Appellant*,

v.

UNITED AUTOMOBILE INSURANCE COMPANY,
*Defendant/Appellee*

## CONSOLIDATED BRIEF OF APPELLANTS

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MSP RECOVERY LAW FIRM
Frank C. Quesada
Michael O. Mena
Charles E. Whorton
Gino Moreno
Arlenys Perdomo
Francesco A. Zincone
2701 S. LeJeune Road, 10th Floor
Coral Gables, FL 33134
(305) 614-2222

PODHURST ORSECK, P.A.
Stephen F. Rosenthal
Ramon A. Rasco
Christina H. Martinez
SunTrust International Center
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
(305) 358-2800

*MSPA Claims 1, LLC v. Covington Spec. Ins. Co.*
Case No. 21-12428-GG
*MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*
Case No. 21-12439-GG

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellants MSPA Claims 1, LLC and MSP Recovery Claims, Series LLC submit this list, which includes all trial judges, attorneys, persons, associations of persons, firms, partnerships or corporations that have an interest in the outcome of these consolidated appeals:

1.    Akerman LLP (counsel for Appellee)

2.    Armas Bertran Pieri (counsel for Appellant)

3.    Altonaga, the Honorable Cecilia M. (U.S. Chief Judge, Southern District of Florida)

4.    AvMed, Inc. (Assignor to Series 17-03-615, designated series of Appellant)

5.    Copperthwaite, Nancy A. (counsel for Appellee)

6.    Cortinas, Angel A. (trial counsel for Akerman LLP)

7.    Covington Specialty Insurance Company (Defendant/Appellee)

8.    Florida Healthcare Plus, Inc. (La Ley Recovery System, Inc.'s assignor)

9.    Gerstin, Ari (trial counsel for Appellee)

10.    Greenberg, Valerie B. (counsel for Appellee)

11.    Guldalian, Bradley T. (trial counsel for Appellee)

12.    Gunster (counsel for Akerman LLP)

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

*MSPA Claims 1, LLC v. Covington Spec. Ins. Co.*
Case No. 21-12428-GG
*MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*
Case No. 21-12439-GG

13.     Hudson, Shayna K. (counsel for Appellant)

14.     Kellgren, Ashley R. (counsel for Appellee)

15.     Kiernan, Michael K. (counsel for Appellee)

16.     Kluger Kaplan Silverman Katzen & Levine, PL (counsel for appellant)

17.     La Ley Recovery Systems, Inc. (Appellant MSPA Claims 1, LLC's assignor)

18.     Lauck, Lisa (co-counsel for Appellants)

19.     Mancuso, Micayla (trial counsel for Appellant)

20.     Martinez, Christina H. (co-counsel for Appellants)

21.     Mena, Michael O. (counsel for Appellants)

22.     Moreno, Gino (counsel for Appellants)

23.     MSP Recovery Law Firm (counsel for Plaintiffs/Appellants)

24.     MSP Recovery Services, LLC (sole member of Appellant)

25.     MSPA Claims 1, LLC (Plaintiff/Appellant)

26.     O'Sullivan, the Honorable John J. (U.S. Chief Magistrate Judge, Southern District of Florida)

27.     Perdomo, Arlenys (counsel for Appellants)

28.     Podhurst Oreseck, P.A. (co-counsel for Appellants)

29.     Quesada, Frank C. (counsel for Appellants)

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346        www.podhurst.com

*MSPA Claims 1, LLC v. Covington Spec. Ins. Co.*
Case No. 21-12428-GG
*MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*
Case No. 21-12439-GG

30.   Rasco, Ramon A. (co-counsel for Appellants)

31.   Rosenthal, Stephen  F. (co-counsel for Appellants)

32.   Ruiz, John H. (trial counsel for Appellants)

33.   Samis, Scot E. (counsel for Appellee)

34.   Series 17-03-615 (designated series of Appellant)

35.   Silverman, Steve I. (counsel for Appellants)

36.   Torres, Edwin G. (U.S. Magistrate Judge, Southern District of Florida)

37.   Traub Lieberman (counsel for Appellee)

38.   United Automobile Insurance Company (Defendant/Appellee)

39.   VRM MSP Recovery Partners, LLC (sole member of Appellant)

40.   West, Bryan T. (counsel for Appellee)

41.   Williams, the Honorable Kathleen M. (U.S. District Judge, Southern District of Florida)

42.   Zincone, Francesco A. (counsel for Appellants)

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, Appellants MSPA Claims 1, LLC and MSP Recovery Claims, Series, LLC, certify that no publicly traded company or corporation owns 10% or more of their stock.

C 3 of 3

*MSPA Claims 1, LLC v. Covington Spec. Ins. Co.*
Case No. 21-12428-GG
*MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*
Case No. 21-12439-GG

s/    *Stephen F. Rosenthal*
Stephen F. Rosenthal

**Podhurst Orseck, P.A**.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

## STATEMENT REGARDING ORAL ARGUMENT

The issues consolidated in these two appeals are the type that readily lend themselves to the benefit of oral argument.

Although this Court has previously engaged with the complex statutory and regulatory scheme of the Medicare Secondary Payer Act on numerous occasions, this appeal presents questions of first impression in this Circuit concerning the preemptive scope of certain provisions of the Act and their regulations. In the first of the consolidated appeals, *Covington*, the primary question is whether a particular provision of the Act that grants a Medicare secondary payer three years to submit its claim for reimbursement to an insurance company preempts a provision in an insurance policy requiring presentment of claims within one year. *Covington* also presents the novel question of whether an insurance company's failure to challenge administratively a Medicare secondary payer's determination of the amount of a beneficiary's medical bills forecloses the insurer from later challenging that amount in litigation.

The second appeal, *United Auto*, involves the related preemption question of whether the Medicare Secondary Payer Act and its regulations displace a state pre-suit demand law, section 627.736(10), Florida Statutes. This issue is not actually one of first impression, since this Court recently held that the Act *does* preempt the

i

Florida statute.  *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1319 (11th Cir. 2020).  However, the *ACE* decision did so without elaboration, leaving it unclear to the district court in *United Auto* that the issue has already been decided by this Court.

For these reasons, and because some of the additional considerations shaping these appeals arise from orders on summary judgment implicating factual disputes, the Appellants believe the Court will likely find oral argument to be helpful.

**Podhurst Orseck, P.A**.

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

# TABLE OF CONTENTS

**PAGE**

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CITATIONS ......................................................... iii

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF THE ISSUES...........................................................1

STATEMENT OF THE CASE & FACTS ..........................................2

    A.    The Medicare Secondary Payer Act.....................................................4

    B.    The Medicare Advantage Program and Federal Preemption................5

    C.    MSPA Claims' Action Against Covington and the Summary Judgment Ruling....................................................................7

    D.    MSP Recovery's Action Against United Auto and the Summary Judgment Ruling....................................................................11

STANDARDS OF REVIEW....................................................13

SUMMARY OF ARGUMENT ...........................................................13

ARGUMENT ...................................................................15

I.    CASE NO. 21-12428:  THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO COVINGTON SPECIALTY INSURANCE COMPANY ....................................................15

    A.    The District Court Erred In Concluding That MSPA Claims Failed To Demonstrate That Covington Is A "Primary Plan" ....................................................15

iii

**Podhurst Orseck, P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

1.    Covington's Contractual Obligation to Pay
      Establishes Its Primary Payer Status.........................................15

2.    Covington's Settlement of the Exemplar Claim
      Independently Establishes Its Primary Payer Status.................29

B.    The District Court Also Erred In Granting Summary Judgment
      As To The Breach Of Contract Count..................................................33

II.   THE DISTRICT COURT ERRED IN DENYING PARTIAL
      SUMMARY JUDGMENT TO MSPA CLAIMS BY CONCLUDING
      COVINGTON HAD NOT WAIVED ITS RIGHT TO CHALLENGE
      THE AMOUNT OF REIMBURSEMENT ...................................................34

A.    This Court Lacks Subject-Matter Jurisdiction To Review
      Covington's Challenge To The Reimbursement Amount.
      ............................................................................................................35

B.    The Administrative Exhaustion Requirement Applies To
      A Primary Payer Like Covington.........................................................39

III.  CASE NO. 21-12439:  THE DISTRICT COURT IN ERRED IN
      GRANTING SUMMARY JUDGMENT TO UNITED AUTO
      BECAUSE FEDERAL LAW PREEMPTS FLORIDA'S PRE-SUIT
      NOTICE REQUIREMENT .........................................................................45

CONCLUSION ........................................................................................................54

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

iv

**Podhurst Orseck, P.A**.

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

# TABLE OF CITATIONS

**PAGE**

## CASES

*Bio-Med. Applications of Tennessee, Inc. v. Cent. States Se. &*

    *Sw. Areas Health & Welfare Fund*,

    656 F.3d 277 (6th Cir. 2011) ........................................................35

*Blue Martini Kendall, LLC v. Miami Dade Cty., Fla.*,

    816 F.3d 1343 (11th Cir. 2016) ...................................................17

*Caldera v. Ins. Co. of the State of Pa.*,

    716 F.3d 861 (5th Cir. 2013) .......................................................54

*Castro v. Sec'y of Homeland Sec.*,

    472 F.3d 1334 (11th Cir. 2006) ...................................................18

*Cisneros v. Alpine Ridge Grp.,*

    508 U.S. 10 (1993) .......................................................................18

*Erickson v. Pardus*,

    551 U.S. 89 (2007) .......................................................................30

*Fracsa v. NCL (Bahamas), Ltd.*,

    654 F. App'x 949 (11th Cir. 2016) ..............................................30

v

*GeorgiaCarry.Org, Inc. v. Georgia*

    687 F.3d 1244 (11th Cir. 2012) .....................................................................30

*Gilmour v. Gates, McDonald and Co.*,

    382 F.3d 1312 (11th Cir. 2004) ...............................................................13, 30

*Health Ins. Ass'n of Am., Inc. v. Shalala*,

    23 F.3d 412 (D.C. Cir. 1994).......................................................................24

*Heckler v. Ringer*,

    466 U.S. 602 (1984).....................................................................................36

*Hurlbert v. St. Mary's Health Care Sys., Inc.*,

    439 F.3d 1286 (11th Cir. 2006) ...................................................................30

\* *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*,

    832 F.3d 1229 (11th Cir. 2016) ....................3-7, 15, 20-23, 37-39, 48-50, 54

*Humana Med. Plan, Inc. v. Reale*,

    180 So. 3d 195 (Fla. Dist. Ct. App. 2015)...................... 34, 36, 37, 39, 40, 42

*King v. Burwell*,

    576 U.S. 473 (2015).....................................................................................19

*MAO-MSO Recovery II, LLC v. Mercury General*,

    2018 WL 3357493 (C.D. Cal. May 23, 2018).............................................33

**Podhurst Orseck, P.A**.

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto Ins. Co.*,

    2018 WL 3420796 (C.D. Ill. July 13, 2018) .................................................33

*Marrache v. Bacardi U.S.A., Inc.*,

    17 F.4th 1084 (11th Cir. 2021) ......................................................18, 24, 48, 52

*Manning v. Utils. Mut. Ins. Co., Inc.*,

    254 F.3d 387 (2d Cir. 2001) ..........................................................................23

*McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*,

    851 F.3d 1076 (11th Cir. 2017) .....................................................................27

*MSPA Claims 1, LLC v. Allstate Ins. Co.*,

    2019 WL 4305519 (N.D. Ill. Sept. 11, 2019).................................................33

*MSPA Claims 1, LLC v. First Acceptance Ins. Co.*,

    380 F. Supp. 3d 1235 (M.D. Fla. 2019) ........................................................54

\* *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*,

    950 F.3d 764 (11th Cir. 2020) ....................................3, 6, 7, 17-19, 27, 47-50

*MSPA Claims 1, LLC v. Scottsdale Ins. Co.*,

    2017 WL 3835879 (S.D. Fla. June 30, 2017).................................................33

\* *MSPA Claims 1, LLC v. Tenet Fla., Inc.*,

    918 F.3d 1312 (11th Cir. 2019) ....................3-7, 19, 21-23, 35, 36, 40, 42, 44

**Podhurst Orseck, P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

*MSP Recovery, LLC v. Allstate Ins. Co.*,

    835 F.3d 1351 (11th Cir. 2016) .........................................................3, 31, 54

\* *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*,

    974 F.3d 1305 (11th Cir. 2020) ................................. 2, 23, 45, 47, 48, 50, 52

*MSP Recovery Claims, Series LLC v. Phoenix Ins. Co.*,

    426 F. Supp. 3d 458 (N.D. Ohio 2019) .........................................................26

*MSP Recovery Claims, Series LLC v. Progressive Corp.*,

    2019 WL 5448356 (N.D. Ohio Sept. 17, 2019) ...........................................26

*Ocean Harbor Cas. Ins. v. MSPA Claims 1*

    261 So. 3d 637 (Fla. Dist. Ct. App. 2018)...................................43, 46, 53, 54

*Ray v. Comm'r, Ala. Dep't of Corr.*,

    915 F.3d 689 (11th Cir. 2019) .......................................................................30

*Strickland v. Norfolk S. Ry. Co.*,

    692 F.3d 1151 (11th Cir. 2012) .....................................................................13

*Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*,

    875 F.3d 584 (11th Cir. 2017) ............................................. 35, 36, 40, 42, 44

*United States v. Baxter Int'l, Inc.*,

    345 F.3d 866 (11th Cir. 2003) .........................................................................5

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346   www.podhurst.com

*Winther v. U.S. Steel Corp.*,

    852 F. App'x 482 (11th Cir. 2021)...............................................................30

## STATUTES

28 U.S.C. § 1291 ................................................................................................1

28 U.S.C. § 1331 ................................................................................................1

29 U.S.C. § 1002(1) .........................................................................................27

42 U.S.C. § 1395ii ...........................................................................................36

42 U.S.C. § 1395w-22........................................................................................43

42 U.S.C. § 1395w-22(a)(4) ...................................................... 7, 14, 20-22, 51

42 U.S.C. § 1395w-22(g) ..............................................................................44

42 U.S.C. § 1395w-22(g)(1)(A)......................................................................35

42 U.S.C. § 1395w-22(g)(5) .................................................................36, 40, 44

42 U.S.C. § 1395w-26(b)(3) .....................................................7, 14, 48, 50, 51

42 U.S.C. § 1395y(b) .....................................................................................1

42 U.S.C. § 1395y(b)(1)(A) ..........................................................................26

42 U.S.C. § 1395y(b)(2) ..................................................................20, 21, 22, 51

42 U.S.C. § 1395y(b)(2)(A) ..................................................................2, 4, 21, 26, 53

42 U.S.C. § 1395y(b)(2)(A)(ii) ..................................................................21, 28, 54

42 U.S.C. § 1395y(b)(2)(B)(i) ..................................................................3, 21, 22

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

42 U.S.C. § 1395y(b)(2)(B)(ii) ..................................................3, 5, 52

42 U.S.C. § 1395y(b)(2)(B)(iii) ......................................................23

42 U.S.C. § 1395y(b)(2)(B)(iv) ......................................................33

42 U.S.C. § 1395y(b)(2)(B)(vi) ........................... 14, 16, 17, 19, 21, 25, 26, 27, 29

42 U.S.C. § 1395y(b)(2)(B)(viii) ....................................................43

42 U.S.C. § 1395y(b)(3)(A)........................... 2, 3, 12, 14, 22, 48, 49, 53

42 U.S.C. § 405(g) ................................................................36, 40

42 U.S.C. § 405(h) ....................................................................36

Medicare Prescription Drug, Improvement, and Modification Act

    of 2003, Pub. L. No. 108-173, 117 Stat. 2066 (2003)......................................6

§ 627.736(10), Florida Statutes...................................... 1, 12, 45, 46, 47, 50, 53, 54

## REGULATIONS

29 C.F.R. § 2560.503-1(b) ...........................................................27

42 C.F.R. § 405.900 ..................................................................43

42 C.F.R. § 411.21 .....................................................................4

42 C.F.R. § 411.22 .................................................................46, 52

42 C.F.R. § 411.22(b)(3) ........................................................14, 16, 29

42 C.F.R. § 411.24(b) ................................................................52

x

**Podhurst Orseck, P.A**.

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

42 C.F.R. § 411.24(e) ......................................................................7, 33

42 C.F.R. § 411.24(f)(1) ...........................................................14, 24, 25

42 C.F.R. § 411.26(a) ...........................................................................33

42 C.F.R. § 411.31(b) ...........................................................................35

42 C.F.R. § 422.108(f) ........................... 7, 14, 22, 24, 25, 33, 51, 52

42 C.F.R. § 422.402 ..............................................................................51

42 C.F.R. § 422.566 ........................................................................40, 41

42 C.F.R. § 422.566(b) ....................................................................35, 42

42 C.F.R. § 422.566(b)(2)(i) ................................................................35

42 C.F.R. § 422.574 ........................................................................40, 41

42 C.F.R. § 422.582 ..............................................................................40

42 C.F.R. § 422.582(a)....................................................................41, 44

42 C.F.R. § 422.582(d) .........................................................................41

## LEGISLATIVE HISTORY

H.R. Conf. Rep. No. 105-217 (1997).....................................................25

H.R. Conf. Rep. No. 108-391 (2003)......................................................7

## ADMINISTRATIVE MATERIALS

63 Fed. Reg. 34968-01 (June 26, 1998)................................................40

**Podhurst Orseck, P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346        www.podhurst.com

## STATEMENT OF JURISDICTION

This Court has appellate jurisdiction because this is a consolidated appeal of two final judgments.  28 U.S.C. § 1291.  Federal subject matter jurisdiction exists because claims in these cases arise under the Medicare Secondary Payer ("MSP") Act, 42 U.S.C. § 1395y(b).  28 U.S.C. § 1331.

## STATEMENT OF THE ISSUES

Case No. 21-12428 (*Covington*):

1.      Whether the district court erred by failing to recognize that the MSP Act's three-year submission-of-claim provision preempts a shorter provision in an insurance policy.

2.      Whether the district court erred by refusing to consider evidence that Covington settled a Medicare beneficiary's claim for medical expenses by treating that evidence as a distinct theory of recovery.

3.      Whether the district court erred in concluding that Covington had not waived its right to challenge the amount of reimbursement of MSPA Claims' conditional payment.

4.      Whether the district court erred in granting summary judgment on MSPA Claims' breach of contract claim.

1

Case No. 21-12439 (*United Auto*):

4.      Whether the district court erred by failing to recognize that the MSP Act's cause of action preempts the pre-suit demand requirement in Florida's no-fault insurance law.


## STATEMENT OF THE CASE AND FACTS

This consolidated appeal arises out of one case brought by Plaintiff-Appellant MSPA Claims 1, LLC ("MSPA Claims") and a second by Plaintiff-Appellant MSP Recovery Claims, Series LLC ("MSP Recovery") against two different insurance companies, Appellees Covington Specialty Insurance Company ("Covington") and United Automobile Insurance Company ("United Auto"), whose liability and no-fault insurance policies rendered them primary payers under the MSP Act, 42 U.S.C. § 1395y(b)(2)(A), for the accident-related medical expenses incurred by Medicare beneficiaries.[1]

The plaintiffs brought these cases on behalf of putative classes of Medicare Advantage organizations ("MAOs") under the MSP Act's private cause of action, section 1395y(b)(3)(A), seeking double damages from the insurers, which were obligated but failed to pay for injured Medicare beneficiaries' accident-related

---

[1] Most of the statutes and regulations cited herein are reproduced in an Addendum following this brief.

2

medical expenses.  The MAOs the beneficiaries were enrolled in paid those

expenses in the first instance, but on a conditional basis, as permitted by the MSP

Act, § 1395y(b)(2)(B)(i).  Covington and United Auto were required by another

provision of the MSP Act to reimburse the MAOs for these conditional payments,

§ 1395y(b)(2)(B)(ii), but failed to do so.  Those MAOs assigned various rights to

MSPA Claims and MSP Recovery, including their rights to assert claims under the

private cause of action against primary payers Covington and United Auto "which

fail[ed] to provide for primary payment (or appropriate reimbursement)" under the

MSP Act, § 1395y(b)(3)(A).

Before turning to the circumstances particular to each case, a succinct

overview of pertinent aspects of the MSP Act and the Medicare Advantage

program frames the discussion.  This Court's recent precedent also adds vital

background.[2]

### A.    The Medicare Secondary Payer Act

The MSP Act was enacted in 1980 "amid rising Medicare costs."  *Tenet*, 918

F.3d at 1316.  Prior to the enactment of the MSP Act, Medicare paid for all

---

[2] *See MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co*., 974 F.3d 1305,
1308-09 (11th Cir. 2020); *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950
F.3d 764, 767-68 (11th Cir. 2020); *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918
F.3d 1312, 1316-17 (11th Cir. 2019); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835
F.3d 1351, 1354-57 (11th Cir. 2016); *Humana Med. Plan, Inc. v. W. Heritage Ins.
Co.*, 832 F.3d 1229, 1233-36 (11th Cir. 2016).

3

medical treatment within its scope and left private insurers merely to pick up whatever expenses remained. *See W. Heritage*, 832 F.3d at 1234. "[T]o curb the rising costs of Medicare," Congress "inverted that system" with the MSP Act by making "private insurers covering the same treatment the primary payers and Medicare the secondary payer." *Id.* (cleaned up). Medicare is now "an entitlement of last resort, available only if no private insurer [is] liable." *Id.* "Primary payers" is broadly defined and can include "a group health plan, worker's compensation plan or law, automobile or other liability insurance policy or plan, no-fault insurance, or self-insured plan." 42 U.S.C. § 1395y(b)(2)(A).

The MSP Act sets forth a scheme of avoidance and recovery to protect Medicare funds. Medicare is to *avoid* making payments for which a primary plan "has made or can reasonably be expected to make payment for [the same] item or service." *W. Heritage*, 832 F.3d at 1234 (citing 42 U.S.C. § 1395y(b)(2)(A)). The MSP Act, however, "carved out an exception: when a responsible primary plan does not promptly meet its obligations, Medicare can pay the entire amount upfront, so long as the primary plan eventually reimburses Medicare for any amounts it overpaid." *Tenet*, 918 F.3d at 1316 (cleaned up). The regulations define a conditional payment to include one made "because the intermediary or carrier did not know that the other coverage existed." 42 C.F.R. § 411.21.

**Podhurst Orseck, P.A**.

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

Under the MSP Act's *recovery* aspect, primary plans are required to reimburse *all* Medicare payments that are rendered secondary within 60 days. 42 U.S.C. § 1395y(b)(2)(B)(ii). "Medicare's payments [are] secondary and subject to recoupment in *all* situations where one of the statutorily enumerated sources of primary coverage could pay instead." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 888 (11th Cir. 2003). In other words, *any payment* that Medicare makes is secondary and subject to reimbursement where a primary plan has a demonstrated responsibility to pay, such as by settling a third-party liability claim or having a contractual obligation under a first-party insurance policy.

To give "some teeth" to the reimbursement provision of the MSP Act, Congress created two causes of action: one that allows the federal government to sue when it is not reimbursed and a second that allows private parties (including MAOs) to sue a primary plan which fails to provide for primary payment or appropriate reimbursement in accordance with the primary/secondary payment structure. *Tenet*, 918 F.3d at 1316; *W. Heritage*, 832 F.3d at 1234-35.

### B.  The Medicare Advantage Program and Federal Preemption

In 1997, Congress enacted Part C to the Medicare Act, now known as the Medicare Advantage program, to "harness the power of private sector competition to stimulate experimentation and innovation that would ultimately create a more efficient and less expensive Medicare system." *W. Heritage*, 832 F.3d at 1235.

5

Under the Medicare Advantage program MAOs are paid a fixed fee by the government in exchange for providing at least the same benefits an enrollee would receive under traditional Medicare. *Id.*; *Tenet*, 918 F.3d at 1316. Congress saw to it that MAOs "stand in the shoes of Medicare" by also making them secondary payers to private insurers just like traditional Medicare. *Tenet*, 918 F.3d at 1317; *accord Kingsway*, 950 F.3d at 768. MAOs also may bring claims under the MSP Act's private cause of action against primary plans that fail to provide primary payment or appropriate reimbursement. *W. Heritage*, 832 F.3d at 1238.

One additional and significant component of the Medicare Advantage program that affirms its equal footing to traditional Medicare is Congress' clarification of the program's preemptive force. In 2003, Congress enacted the Medicare Prescription Drug, Improvement, and Modification Act of 2003 ("MMA"), Pub. L. No. 108-173, 117 Stat. 2066 (2003).[3] In response to cases that construed Part C preemption too narrowly, the MMA greatly expanded its preemptive scope. The MMA was meant to "clarif[y] that the M[edicare] A[dvantage] program is a federal program operated under Federal rules. State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency. There has been some confusion in recent court

---

[3] The MMA changed Medicare Part C's name from "Medicare+Choice" to "Medicare Advantage." *W. Heritage*, 832 F.3d at 1235 n.2.

6

cases." H.R. Conf. Rep. No. 108-391, at 557 (2003).

The statutes governing the Medicare Advantage program broadly and expressly provide that the "standards" under Part C "supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations." 42 U.S.C. § 1395w-26(b)(3). Those "standards" include an MAO's rights as a secondary payer to recover its conditional payments. *See* § 1395w-22(a)(4). The governing regulations likewise promote parity between Medicare Advantage and the federal government regarding the primary/secondary payment structure and a primary plan's failure to make primary payment or reimbursement. *See* 42 C.F.R. § 422.108(f) ("The MAO will exercise the same rights to recover … that the Secretary exercises …."); *see also W. Heritage*, 832 F.2d at 1236; *Tenet*, 918 F.3d at 1317; *Kingsway*, 950 F.3d at 768.

### C.    MSPA Claims' Action Against Covington and the Summary Judgment Ruling

MSPA Claims sued Covington under the MSP Act's private cause of action (Count I) and for breach of contract (Count II)[4] as the representative of a putative class of MAOs, consisting of its assignor Florida Healthcare Plan ("FHCP") and

---

[4] The breach of contract claim is based on MSPA Claims' rights under 42 C.F.R. § 411.24(e) to recover unreimbursed conditional payments as a subrogee to the beneficiary's or insured's right of action against Covington. DE 55, ¶ 62.

**Podhurst Orseck, P.A.**

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

other class members that made conditional payments for which Covington had primary payer responsibility. DE 55 (Am. Compl.), ¶¶ 1-3; DE 170 (Rep. & Rec.) at 2. The Amended Complaint identifies a representative example—the "P.M." claim—of Covington's failure to either pay first or reimburse FHCP for conditional payments for which Covington was the primary payer under a no-fault insurance policy in violation of the MSP Act. DE 55, ¶¶ 7-13.

The undisputed facts concerning the claim for secondary payments related to P.M. are as follows. P.M. was injured in a slip-and-fall accident in February 2014 at a property located in Palm Beach, Florida, which was covered by a commercial general liability ("CGL") policy Covington issued. DE 131, ¶¶ 7, 8; DE 135, ¶ 2; DE 170 at 2 n.2. The policy included medical payments ("med-pay") coverage "regardless of fault." DE 131, ¶ 8; DE 135-4 at 8. P.M. was an enrollee in Medicare Part C through a plan administered by FHCP. DE 135, ¶ 2; DE 135-1 (Miranda Decl.), ¶ 25. She received treatment for her accident-related injuries, for which her healthcare providers charged $5,503 and FHCP paid $2,347.89. DE 135, ¶ 5; DE 135-1, ¶ 26; DE 55-1 (P.M. claims data).

Although not required to, MSPA Claims tried to coordinate reimbursement with Covington prior to bringing an action, by first notifying Covington of its lien for P.M.'s medical expenses on July 1, 2015. DE 131, ¶¶ 13, 14; DE 131-7; DE 147, ¶ 14. The notice generated a series of communications between MSPA

8

Claims and Covington regarding the specifics of the claim, culminating in a formal

demand for reimbursement of $15,825.43 on December 23, 2015.  DE 131, ¶¶ 15-

19; DE 131-5; DE 131-7; DE 131-10; DE 131-13.

On April 1, 2016, Covington and P.M. entered into a settlement agreement

related to the accident for $16,750.  DE 135, ¶ 20; DE 135-11.  The settlement

released all claims relating to "bodily and personal injuries" P.M. suffered.  DE

135-11 at 1.  Covington admits it reported this settlement to the government by

July 15, 2016.  DE 154, ¶ 15; DE 135-6 (DeMint Depo.) at T.146:7-21.[5]  To date,

Covington has not reimbursed MSPA Claims for the conditional payments made

for P.M.  DE 154, ¶ 22; DE 135-5 at T.121:17-24.

Following discovery into P.M.'s exemplar claim, Covington and MSPA

Claims filed cross motions for summary judgment, DE 130; DE 134, responses

thereto, DE 146, DE 152, and replies, DE 156, DE 161.  Covington sought

summary judgment arguing that no evidence established its responsibility to pay

P.M.'s medical expenses as a primary payer because no one reported P.M.'s

expenses within the one-year claims-filing period of its policy, DE 130 at 5-6, and

that MSPA Claims had not presented competent evidence that FHCP paid for

P.M.'s medical expenses, *id.* at 7-16.  MSPA Claims sought partial summary

---

[5] Citations to transcripts ("T.") use the transcript's pagination; citations to
documents use the court's ECF pagination.

9

judgment on several of Covington's affirmative defenses, including two that challenged the amount and reasonableness of the conditional Medicare payments, because Covington waived any such disputes by failing to exhaust administrative remedies required by the Medicare Act. DE 134 at 2-3, 16-17.

The magistrate judge issued a report and recommendation granting summary judgment in Covington's favor and denying MSPA Claims' motion on all grounds. DE 170 at 46. The report reached several conclusions, including that:

(1)    MSPA Claims could not rely on evidence of Covington's settlement to establish primary payer status because it constituted an unpled "new theory of recovery," *id.* at 12-13;

(2)    Covington's "Section 111" report to the federal government does not by itself establish its primary payer status, *id.* at 16-26;

(3)    The med-pay provision is not "dispositive of whether an insurer constitutes a primary payer," *id.* at 26-27, and Covington was not responsible under that provision because no one had made a claim within the policy's one-year claims-filing period, *id.* at 39-43;

(4)    No provision of the MSP Act or its implementing regulations preempts Covington's one-year claims-filing policy provision, *id.* at 28-33;[6] and

(5)    Covington had no right or obligation to appeal an "organization determination" by an MAO, and thus would not be precluded from disputing the amount of any reimbursement owed or the reasonableness, relatedness or necessity of P.M.'s medical expenses for failing to exhaust administrative remedies, *id.* at 34-37.

---

[6] The magistrate judge found the MSP Act's longer, three-year claims-filing provision to be "irrelevant." *Id.* at 42-43 n.16.

10

Following MSPA Claims' objections to the report, DE 172, Covington's response, DE 173, and a reply, DE 176, the district court adopted the report.  DE 177.

### D.    MSP Recovery's Action Against United Auto and the Summary Judgment Ruling

In appeal No. 21-12439, MSP Recovery sued another insurer, United Auto, under the MSP Act's private cause of action (Count I) and for breach of contract (Count II) as the class representative of a putative class of MAOs that made conditional payments for which United Auto had primary-payer responsibility.  DE 20 (Am. Compl.), ¶¶ 69, 80-97.  The Amended Complaint identifies two representative examples of United Auto's failure either to pay first or reimburse an MAO for conditional payments in violation of the MSP Act—the "W.T." and "W.M." claims.  *Id.*, ¶¶ 49-68.

On January 11, 2017, W.T. sustained injuries in an automobile accident.  DE 20, ¶ 50; DE 145 at 7, ¶ 1.[7]  W.T. was insured by a United Auto no-fault policy.  DE 125-2, ¶ 5.  AvMed, an MAO and MSP Recovery's assignor, provided Medicare benefits to W.T. after his injuries.  DE 20, ¶¶ 49, 53-54; DE 145 at 8, ¶ 3; DE 145-1, ¶¶ 33-34.  AvMed made conditional payments for the medical expenses

---

[7] MSP Recovery's statement of material facts begins at DE 145 at 7.

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

related to the accident, which were never reimbursed by United Auto.  DE 20, ¶¶ 57-58; DE 20-4; DE 145 at 8, ¶ 3; DE 145-1, ¶ 35.

On December 3, 2016, W.M. sustained injuries in an automobile accident for which he received medical treatment.  DE 20, ¶ 60; DE 125, ¶¶ 44-45; DE 145 at 9.  W.M. was also insured by a United Auto no-fault policy.  DE 125-2, ¶ 6.  W.M. was enrolled in Medicare Part C, through a Medicare Advantage plan administered by AvMed.  DE 20, ¶¶ 59, 63-64; DE 125, ¶ 45; DE 145 at 10, ¶ 16; DE 145-1, ¶¶ 33-34.  AvMed made conditional payments for the medical expenses related to the accident, which were never reimbursed by United Auto.  DE 20, ¶¶ 64-67; DE 20-6; DE 145 at 10, ¶ 18; DE 145-1, ¶ 35.

Prior to filing suit, MSP Recovery did not send United Auto a written pre-suit demand pursuant to section 627.736(10), Florida Statutes, relating to W.T. or W.M.  DE 125-2, ¶ 7.

United Auto moved for summary judgment on several grounds.  DE 124 at 2.  After full briefing, the district court granted summary judgment to United Auto on the ground that "written notice of intent to initiate litigation" is a precondition to suit under section 1395y(b)(3)(A).  *Id.* at 4; *see id.* at 2, 6.  The court disagreed that the MSP Act preempts Florida's no-fault pre-suit notice provision and that the Eleventh Circuit in *ACE* had already rejected the notion that Medicare or an MAO must satisfy such pre-suit demand requirements.  *Id.* at 5-6.

12

These timely appeals, which the Court consolidated, followed.

## STANDARDS OF REVIEW

A grant of summary judgment is reviewed *de novo*, "viewing all evidence and drawing all reasonable factual inferences in favor of the nonmoving party." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012). A district court's exclusion of a plaintiff's theory at summary judgment on the ground that it was unpled is also reviewed *de novo*. *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004).

## SUMMARY OF THE ARGUMENT

The district courts' rulings improperly shield insurance companies from their liability under an important federal program. The purpose of the MSP Act is to protect the fiscal integrity of the Medicare program by ensuring that Medicare will not be required to pay for items or services for which a primary plan should be responsible. Congress intended MAOs to exercise comparable rights of recovery as the federal government to indirectly reduce the cost of the Medicare program. In furtherance of these goals, Congress enacted provisions to preempt state statutes or private contractual terms that conflict with federal recovery rights, and the Secretary of Health and Human Services has promulgated regulations implementing that design.

13

The district courts each failed to give effect to these preemptive provisions. The one-year claims-notice provision in Covington's insurance policy conflicts with, and is thus preempted by, the three-year window Congress gave secondary payers. *See* 42 U.S.C. § 1395y(b)(2)(B)(vi); *see also* 42 C.F.R. §§ 422.108(f), 411.24(f)(1). Similarly, United Auto cannot assert non-compliance with a Florida pre-suit demand requirement as a precondition to a federal right of action under the MSP Act. Such a state law conflicts with the straight and unencumbered path Congress paved towards MAOs' recovery against primary plans. *See* 42 U.S.C. §§ 1395y(b)(3)(A), 1395w-26(b)(3), 1395w-22(a)(4); *see also* 42 C.F.R. § 422.108(f). Once these non-federal obstacles are removed from that path, there is no basis for summary judgment in either case on the issue of the insurer's demonstrated contractual responsibility to make primary payment.

The Court need not resolve the preemption question in *Covington*, however, since that case presents an alternative route for reversal. It is undisputed that Covington settled P.M.'s claim and paid P.M.'s medical expenses. That separately demonstrates Covington's responsibility as a primary plan. 42 C.F.R. § 411.22(b)(3). The district court wrongly excluded reliance on that evidence at summary judgment.

In remanding in *Covington*, the Court should narrow the litigation by rejecting Covington's affirmative defenses that seek to challenge reimbursement

14

amounts. Such challenges are subject to a mandatory administrative exhaustion requirement which Covington did not pursue. As a result, the courts lack jurisdiction to consider disputes over that subject. The district court erred in denying partial summary judgment on those defenses.

## **ARGUMENT**

## I.  **CASE NO. 21-12428: THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO COVINGTON**

The district court granted summary judgment to Covington because it concluded that MSPA Claims could not satisfy its burden to prove the first element of an MSP Act claim, *Humana Med. Plan, Inc. v. Western Heritage*, *Ins., Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016):  that Covington is a "primary plan." *See* DE 170 at 14-15, 44.  This conclusion was erroneous.

### A.  **The District Court Erred In Concluding That MSPA Claims Failed To Demonstrate That Covington Is A "Primary Plan"**

MSPA Claims demonstrated that Covington is a primary plan through its contractual obligation to pay and its settlement of the exemplar claim, either of which is an independent basis to deny summary judgment.

#### 1.  **Covington's Contractual Obligation to Pay Establishes Its Primary Payer Status**

The district court's conclusion that the policy's med-pay provision did not render Covington a primary payer was error for two reasons.  First, it failed to

15

recognize that MSPA Claims did not rely on "the mere presence of an insurance contract" but also adduced evidence that Covington was "responsible for the payment of P.M.'s [medical] expenses" under the med-pay provision because the unreimbursed payments fell within the policy's terms.  DE 170 at 26-27.  *See* DE 135-4 at 8 (medical payments provision); DE 131, ¶ 8 (Covington's acknowledgement that the med-pay provision covers medical payments).

Second, the district court held that the claims foundered upon non-compliance with Covington's one-year contractual claims-filing deadline, despite a preemptive federal law granting a Medicare secondary payer three years to "seek to recover conditional payments … under a primary plan," 42 U.S.C. § 1395y(b)(2)(B)(vi).  *See generally* DE 170 at 28-33; 38-43.  Because MSPA Claims made a demand within three years after P.M. received medical treatment, and because MSPA Claims proved that the treatment otherwise fell within the policy's terms, it was error to grant Covington summary judgment.  At a minimum, disputed issues of material fact exist concerning Covington's responsibility as the primary payer of P.M.'s medical expenses based on its "contractual obligation," 42 C.F.R. § 411.22(b)(3).

The analysis starts with the recognition that preemptive federal law precludes insurers like Covington from unilaterally defining their MSP Act liability through a short contractual claim-filing window.  Several provisions of

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

federal law conflict with, and therefore supersede, Covington's contract provision, the most pertinent being the federal claims-filing provision in section 1395y(b)(2)(B)(vi).  *See* DE 146 at 9 n.13.[8]

> The federal claims-filing provision in the MSP Act states:

> *Notwithstanding any other time limits that may exist for filing a claim under an employer group health plan*, the United States may seek to recover conditional payments in accordance with this subparagraph where the request for payment is submitted to the entity required or responsible under this subsection to pay … under a primary plan *within the 3-year period beginning on the date on which the item or service was furnished.*

42 U.S.C. § 1395y(b)(2)(B)(vi) (emphasis added).  This provision "allows Medicare to overcome any time limits prescribed by an employer's group health plan that might otherwise prevent it from requesting reimbursement."  *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764, 772 (11th Cir. 2020).  This interpretation of subparagraph (vi) flows from the plain meaning of the dependent clause beginning with "notwithstanding," which means "'in spite of' or

---

[8] The district court found that MSPA Claims "abandoned the opportunity" to explain how the MSP Act's claims-filing period bore on Covington's defense, but nonetheless went on to deem the period "irrelevant."  DE 170 at 42-43 & n.16.  The district court's treatment of the subject should suffice to preserve the issue for appeal.  But even if it does not, the Court should exercise its discretion to consider the important statutory question under well recognized exceptions to the prudential rule against consideration of an issue for the first time on appeal.  *See Blue Martini Kendall, LLC v. Miami Dade Cty., Fla.*, 816 F.3d 1343, 1349 (11th Cir. 2016) (discussing exceptions regarding pure questions of law and questions of general impact).

17

'without prevention or obstruction from or by.'" *Id.* at 773 (citations omitted). As the *Kingsway* Court explained, the provision thus "allows Medicare (or, on our assumption, an MAO) to circumvent time limits that an employer's group health plan might otherwise place on claims." *Id.* So, "[i]n the event of a clash between a provision in an employer's group health plan that purports to limit when a claim may be filed and the three-year statutory period, the latter prevails." *Id.*

Congress' use of the "notwithstanding" clause in subparagraph (vi) conveys its intent to expressly preempt more stringent contractual claims-filing periods. *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1094 (11th Cir. 2021) ("Express preemption occurs when Congress manifests its intent to displace a state law using the text of a federal statute.") (cleaned up). Such "notwithstanding" clauses are recognized as being among the "cleare[st]" possible ways Congress can express its intent to supersede other contrary rules. *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993); *see Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1337 (11th Cir. 2006).

This Court has yet to squarely address whether the MSP Act's claims-filing provision preempts contrary contract provisions in MAO reimbursement actions. The *Kingsway* Court assumed but did not need to decide that it extended to MAOs because the question before it could be answered by rejecting the contention that the claims-filing provision "operate[s] as any sort of prerequisite—for *anyone*," be

18

it the United States or an MAO. 950 F.3d at 772 (emphasis added). That assumption—based on the "degree of functional parity between private MAOs and government-run Medicare" that this Court has previously recognized, *id*. (citing *MSPA Claims 1, LLC v. Tenet, Fla., Inc.*, 918 F.3d 1312, 1317 (11th Cir. 2019))—was well founded.

The broader statutory scheme in which the claims-filing provision is situated demonstrates the accuracy of the *Kingsway* Court's assumption. By way of preview, the claims-filing provision is designed to facilitate the "recover[y of] conditional payments," 42 U.S.C. § 1395y(b)(2)(B)(vi), an essential component of the Medicare-as-secondary-payer federal program. One must read the words "recover[y of] conditional payments" "in their context and with a view to their place in the overall statutory scheme," *King v. Burwell*, 576 U.S. 473, 486 (2015) (cleaned up). Central to the MSP statutory scheme is the making and recovery of conditional payments, something *both* the government and MAOs are expressly authorized to do. Put in this proper context, the preemptive power of the claims-filing period extends to MAO reimbursement actions.

As a starting point, "MAOs stand in the shoes of Medicare" with regard to the "primary/secondary payment structure." *Tenet*, 918 F.3d at 1317. More specifically, "MAOs, like Medicare, can make payments in excess of their secondary obligations, conditioned on later receiving reimbursement from the

**Podhurst Orseck, P.A**.

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

primary payer." *Id.* The statutory authority permitting an MAO to make and recoup its conditional payments, 42 U.S.C. § 1395w-22(a)(4), is sometimes called the "right-to-charge" provision. *See id.* (citing *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1235 (11th Cir. 2016)). As to an MAO's secondary-payer rights, section 1395w-22(a)(4) states in relevant part:

> Notwithstanding any other provision of law, a Medicare [Advantage] organization may (in the case of the provision of items and services to an individual under a Medicare [Advantage] plan *under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title*) charge … in accordance with the charges allowed under a law, plan, or policy described in such section ... the insurance carrier ... which under such law, plan, or policy is to pay for the provision of such services[.]

(emphasis added).

*Western Heritage* concluded that this "right-to-charge provision confirms" an MAO's right to make a conditional payment that overlapping coverage renders secondary and establishes an MAO's "statutory right to charge a primary plan when an MAO payment is made secondary pursuant to the MSP [Act]." 832 F.3d at 1238. The mechanism by which the MAO right-to-charge provision makes an MAO payment "secondary" is its incorporation of "section 1395y(b)(2) of this title." *Id.* at 1234; *see* § 1395w-22(a)(4). Section 1395y(b)(2) is the Medicare Secondary Payer provision. This statutory cross-reference anchors the conclusion that "MAO payments are made secondary to primary payments." *W. Heritage*, 832 F.3d at 1237.

20

**Podhurst Orseck, P.A**.

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

Section 1395y(b)(2), specifically subparagraph (B)(i), authorizes Medicare and, by extension MAOs (through the right-to-charge statute's cross-reference), to make reimbursable conditional payments.  Absent that authority, neither the government, nor an MAO, would be permitted to pay for an enrollee's medical care.  *See* § 1395y(b)(2)(A) ("Payment under this subchapter may not be made, except as provided in subparagraph (B)"); *see also W. Heritage*, 832 F.3d at 1237 ("[P]aragraph (2)(A) unambiguously refers to all Medicare payments, which include both traditional Medicare and Medicare Advantage plans.").  Thus, where an MAO has made a "payment" that is "secondary pursuant to § 1395y(b)(2)," § 1395w-22(a)(4), it necessarily has done so under the authority and terms provided for making such a "conditional payment" in section 1395y(b)(2)(B)(i).  In the right-to-charge provision, Congress empowered MAOs to "charge ... the insurance carrier ... which under such law, plan, or policy is to pay for the provision of such services" that the MAO conditionally paid.

Returning to the claims-filing provision, the reference to the "United States" must be viewed against this comprehensive statutory scheme empowering both the government and MAOs "to recover conditional payments," § 1395y(b)(2)(B)(vi).  If MAOs "stand in the shoes of [traditional] Medicare," *Tenet*, 918 F.3d at 1317, for purposes of determining secondary payer status, § 1395y(b)(2)(A)(ii), and having authority to make conditional payments notwithstanding their secondary

21

status, § 1395y(b)(2)(B)(i), then the right-to-charge's cross-reference to section 1395y(b)(2) must grant MAOs the same bucket of rights as traditional Medicare to seek repayment from a primary insurer for an MAO payment that "is made secondary," § 1395w-22(a)(4). Since "an MAO both has secondary payer status and can make reimbursable secondary payments," *W. Heritage*, 832 F.3d at 1238, it enjoys the same rights as the government with respect to primary plans. *See* 42 C.F.R. § 422.108(f) ("The MA organization will exercise the same rights to recover from a primary plan … that the Secretary exercises ...").

The claims-filing provision speaks directly to the terms governing the recoupment of such secondary payments, expressing Congress's intent that the time limits in a primary plan for filing a claim may not be interposed as an obstacle to the recovery of those secondary payments if the limits are shorter than three years from the date the item or service was furnished to the Medicare beneficiary. The claims-filing provision thus establishes a preemptive federal rule facilitating the recovery of conditional payments.

In construing a materially different provision of the MSP Act, this Court has held the term "United States" excludes an MAO, but that conclusion should not affect the interpretation of the claims-filing provision. In *Tenet*, the Court held that an MAO must solely rely on the private cause of action (§ 1395y(b)(3)(A)) to sue a primary payer seemingly because the alternative cause of action (in section

**Podhurst Orseck, P.A**.

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

1395y(b)(2)(B)(iii)) refers to the "United States." *See* 918 F.3d at 1317. The Court emphasized that Congress provided two different causes of action: a private cause of action against "a primary plan" and a separate government cause of action against "any entity." *Id.* at 1320-21. Reading the term "United States" to limit the latter cause of action to the government is consistent with Congress's creation of a *separate* cause of action for private parties. *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1312-13 (11th Cir. 2020).[9] The *Tenet* Court considered which entities reimbursement actions could target, not the preemptive force of any provision.

Unlike the distinct causes of action considered in *Tenet*, Congress created only one claims-filing provision. There is no parallel provision regarding the preemption of claims-filing periods from which it might be inferred that Congress intended to restrict that power to government reimbursement actions. The claims-filing provision articulates a preemptive principle, one designed to facilitate the recovery of conditional payments. Against a statutory backdrop where Congress gave MAOs "a statutory right to charge a primary plan when an MAO payment is made secondary pursuant to the MSP [Act]," *W. Heritage*, 832 F.3d at 1238—

---

[9] The government right of action was added in 1984 and the private right of action two years later, presumably to incentivize private citizens to recover funds erroneously paid by Medicare. *See Manning v. Utils. Mut. Ins. Co., Inc.*, 254 F.3d 387, 397 n.8 (2d Cir. 2001).

23

thereby placing MAOs on an equal footing with the government with respect to the recoupment of conditional payments from primary plans—there is no good reason to read the reference to the "United States" in the claims-filing provision as an implicit limitation on MAOs' parity with the government for recovery of conditional payments on behalf of Medicare beneficiaries.

This reading is consistent with the regulations governing an MAO's rights in the secondary-payer system, which themselves "have no less pre-emptive effect than [the MSP Act]," *Marrache*, 17 F.4th at 1094.   As noted, 42 C.F.R. § 422.108(f) makes explicit that an MAO "will exercise *the same rights to recover* from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations[.]"  (emphasis added).  In order for an MAO's right to recover from a primary plan to be "the same" as the Secretary's, it must also benefit from the preemption of shorter claims-filing periods in insurance policies.

The cross-referenced regulations in section 422.108(f) include section 411.24(f), entitled "Claims filing requirements," which states:

> CMS may recover without regard to any claims filing requirements that the insurance program or plan imposes on the beneficiary or other claimant such as a time limit for filing a claim or a time limit for notifying the plan or program about the need for or receipt of services.

42 C.F.R. § 411.24(f)(1).  Although the D.C. Circuit concluded in 1994 that it "would find th[is] regulation an invalid extension of the MSP statute," *Health Ins. Ass'n of Am., Inc. v. Shalala*, 23 F.3d 412, 418-20 (D.C. Cir. 1994), Congress

responded directly to that court's ruling in 1997 by amending the MSP Act by, among other things, adding section 1395y(b)(2)(B)(vi)—the claim-filing provision. Pub. L. 105-33, § 4632; 111 Stat. 486 (1997).[10]

Consistent with Congress' clear intention to fill the statutory gap the D.C. Circuit identified regarding the preemption of impermissibly strict claims-filing periods in insurance policies, the Secretary has never rescinded section 411.24(f)(1). Because this *regulatory* preemptive provision regarding claims-filing requirements now derives authority from the *statutory* claims-filing provision, it is unquestionably valid insofar as it permits the Secretary to submit a claim "within the 3-year period beginning on the date on which the item or service was furnished." 42 U.S.C. § 1395y(b)(2)(B)(vi). By operation of 42 C.F.R. § 422.108(f), which mandates that an MAO "will exercise the same rights to recover from a primary plan … that the Secretary exercises," an MAO, too, can avail itself of the benefits of the extended three-year period in which to submit a claim to a

---

[10] The accompanying House Conference Report explained:

> In many cases where MSP recoveries are sought, *claims have never been filed with the primary payer*. Identification of potential recoveries under the data match process typically takes several years—considerably *in excess of the period many health plans allow for claims filing*. A 1994 appeals court decision held that [the Health Care Financing Administration] could not recover overpayments without regard to an insurance plan's requirements.

H.R. Conf. Rep. No. 105-217, at 831 (1997) (emphasis added).

**Podhurst Orseck, P.A**.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

primary plan without regard to a more restrictive claims-filing period in an insurance policy.

Last, to anticipate one further textual consideration, the preemptive force of the claims-filing provision is not limited to impermissibly strict claims-filing periods in insurance policies issued by employer group health plans. Although the dependent clause in the provision beginning with "notwithstanding" refers to "an employer group health plan," that does not limit its scope.[11] The affirmative statement of the preemptive principle in the independent clause is broader; it is not limited to employer group health plans. It applies to all primary plans. The text speaks of the submission of a "request for payment … to the entity required or responsible to pay … *under a primary plan* …" § 1395y(b)(2)(B)(vi) (emphasis added). A "primary plan" is a defined term which includes, but is much broader than, employer group health plans. § 1395y(b)(2)(A).[12] If Congress intended the preemptive scope of the claims-filing provision to be limited to the subcategory of employer group health plans, it could easily have repeated that term in the

---

[11] *But see MSP Recovery Claims, Series LLC v. Phoenix Ins. Co.*, 426 F. Supp. 3d 458, 488 (N.D. Ohio 2019); *MSP Recovery Claims, Series LLC v. Progressive Corp.*, 2019 WL 5448356, at 9 (N.D. Ohio Sept. 17, 2019).

[12] It means both a "group health plan" or "large group health plan," *id.*, which are separately defined, *see* § 1395y(b)(1)(A), as well as a workmen's compensation law or plan, automobile, liability, and no-fault insurance policies, and self-insured plans, § 1395y(b)(2)(A).

26

independent clause.  Congress' choice to use different terms indicates "different meanings."  *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1089 (11th Cir. 2017) (en banc).  That is particularly so when Congress defined one of those terms.

Given that the independent clause of subparagraph (vi) sets forth a "permissive" preemptive rule, *Kingsway*, 950 F.3d at 773-774, allowing three years in which a secondary payer "*may* seek to recover conditional payments," § 1395y(b)(2)(B)(vi) (emphasis added), the dependent "notwithstanding" clause merely clarifies the preemptive nature of that rule.  Without the dependent clause, the independent clause would still articulate a preemptive federal rule overriding shorter claims-filing periods that exist as a matter of state law or private contract. The dependent clause also functions to clarify how the claims-filing rule should interact with any claims-filing rules applicable to employer group health plans established by other federal laws, such as the Employee Retirement and Income Security Act, 29 U.S.C. § 1001, *et seq.*[13]

Thus, the district court erred in dismissing the claims-filing provision as "irrelevant."  DE 170 at 43 n.16.  The longer federally imposed claims-filing period makes all the difference for summary judgment on Covington's payment

---

[13] *See* 29 U.S.C. § 1002(1) (defining "employee welfare benefit plans"); 29 C.F.R. § 2560.503-1(b) (stating that employee benefit plans must establish a "reasonable" claims procedure for participants).

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com

responsibility under the med-pay provision.  With Covington's one-year claims reporting provision preempted by federal law, MSPA Claims timely sought recovery of the conditional payments for P.M. from Covington, such that "payment … [could] reasonably be expected to be made," § 1395y(b)(2)(A)(ii), by Covington under its insurance policy for the medical expenses P.M. incurred as a result of injuries she sustained on February 25, 2014.  *See* DE 55, ¶ 8; DE 131, ¶¶ 7, 8; DE 135, ¶¶ 2-4, 16-18; DE 135-2 at T.46:8-22, T.49:12-19; DE 135-8; DE 135-9; DE 135-10.

Specifically, under that policy Covington "will pay medical expenses … for 'bodily injury' caused by an accident … regardless of fault … not [to] exceed the applicable [$5,000] limit of insurance."  DE 135-4 at 8; *see also* DE 131, ¶ 8; DE 135, ¶ 7; DE 10-3 at 22..  MSPA Claims presented evidence of P.M.'s receipt of medical treatment for the accident-related injuries she sustained on the covered property for which the medical providers billed $5,503 and FHCP made a conditional payment of $2,347.89.  *See* DE 135, ¶¶ 3-5; DE 131, ¶ 11; DE 147, ¶ 11; DE 147-1; DE 147-2: DE 147-3; ¶¶ 19-20..

Covington acknowledges that MSPA Claims first put it on notice of its lien for P.M.'s medical expenses on July 1, 2015, about sixteen months after P.M.'s

**Podhurst Orseck, P.A**.

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    | www.podhurst.com

accident, DE 131, ¶¶ 13, 14; DE 131-7; DE 147, ¶ 14.[14]  MSPA Claims' notice

generated a series of communications with Covington over the next several months

regarding the specifics of the claim, culminating in a formal demand for

reimbursement of $15, 825.43 on December 23, 2015.  DE 131, ¶¶ 15-19; DE 131-

5; DE 131-7; DE 131-10; DE 131-13.  All of these communications are within the

three-year period that section 1395y(b)(2)(B)(vi) allows for requesting repayment.

The record evidence thus precludes summary judgment for Covington on the

issue of whether its contractual obligation demonstrated its responsibility to

reimburse the conditional payments made for P.M.'s medical expenses.

### 2. Covington's Settlement of the Exemplar Claim Independently Establishes Its Primary Payer Status

It is uncontested that Covington settled a third-party liability claim made by

P.M. against the bodily injury component of the CGL policy and that this

settlement (if considered) renders Covington a primary payer as a matter of law.

*See* DE 167 at 3, ¶ 5(h); DE 135, ¶ 20; DE 154, ¶ 20; 42 C.F.R. § 411.22(b)(3).

Although MSPA Claims marshaled the evidence of the settlement at summary

judgment, the district court refused to consider it, accepting instead Covington's

argument that the settlement constituted an unpled new theory of liability.  That

---

[14] The policy provides that Covington "will pay medical expenses" that "are
incurred and *reported* to [it] within one year of the date of the accident."  DE 135-4
at 8 (emphasis added); DE 131, ¶ 8.  The policy does not limit who may report a
claim.

**Podhurst Orseck, P.A**.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

ruling was erroneous, *see Gilmour*, 382 F.3d at 1314, since the complaint's theory of liability was pled broadly enough to encompass the additional evidence of the settlement agreement and Covington was aware of it long before summary judgment.

The fulcrum between the liberal rules of pleading and the rule against introducing unpled theories at summary judgment is whether the complaint can fairly be read to encompass the contested theory. A complaint need not identify the plaintiff's "'precise theory'" so long as it "'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Winther v. U.S. Steel Corp.*, 852 F. App'x 482, 484 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) and *Ray v. Comm'r, Ala. Dep't of Corr.*, 915 F.3d 689, 697 n.3 (11th Cir. 2019)). Where a complaint "provide[s] no notice whatsoever" of the theory, *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006), or no "factual allegations that could possibly be construed" as advancing it, *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 (11th Cir. 2012), then it may properly be rejected at summary judgment. But where a defendant is not "ambushed" by the theory, it is error to refuse to consider it. *Fracsa v. NCL (Bahamas), Ltd.*, 654 F. App'x 949, 954 n.6 (11th Cir. 2016).

The district court viewed the operative complaint's broad allegations too restrictively and ignored the fact that Covington knew all along that it had settled

**Podhurst Orseck, P.A**.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com

P.M.'s liability claim.  *See* DE 170 at 9-14; DE 177 at 1 n.1.  After all, the case concerns Covington's failure to live up to its "primary payer" status.  That status arises from a demonstration that it is or was responsible for the medical item or service.  *See MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1358-60 (11th Cir. 2016).  The complaint alleges that Covington was responsible because of its contractual obligations to pay for P.M.'s (and the putative class members') accident-related medical expenses.  DE 55, ¶¶ 3, 8, 38.

To be sure, the complaint referenced Covington's insurance policies as the source of its obligation to pay, *id*., ¶¶ 8, 12, 51, 52, but that same contractual obligation also formed the basis for the settlement agreement to pay P.M.'s medical expenses that Covington disclosed during discovery.  *See* DE 135-4 at 2 (bodily-injury coverage); *id*. at 8 (medical-payments coverage); DE 135-6 at T.137:24-138:16, T.152:11-25.  Moreover, "a settlement agreement is just a type of contract," and the MSP Act does not "treat[] [settlement agreements and contractual obligations under insurance policies] differently."  *Allstate*, 835 F.3d at 1361.

The district court failed to appreciate the common contractual roots of the settlement agreement and the underlying insurance policy.  It reasoned that "the settlement agreement … provides a completely different theory of recovery."  DE 170 at 13.  That greatly overstates the case.  The theory remains the same:

**Podhurst Orseck, P.A**.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

Covington is a "primary plan" because its responsibility to pay can be demonstrated by a contractual obligation—whether an insurance policy or a settlement agreement reached because of the obligation in the insurance policy. *See* DE 172 at 2, 5-6; DE 161 at 1. While the settlement agreement may indeed provide "an alternative way for MSPA [Claims] to meet the elements to sustain a private cause of action," DE 170 at 13, that does not make it an altogether new theory that may be ignored at summary judgment.

The complaint gave Covington notice that MSPA Claims seeks to satisfy the primary payer element of the claim through its contractual obligations. Although the record shows that MSPA Claims did not learn about the settlement until March 31, 2020, when Covington served an amended interrogatory responses disclosing it, DE 147-4 at 4-5, *Covington* knew by April 1, 2016 that it had entered into a settlement agreement implicating a Medicare lien. *See* DE 161 at 1; DE 135-6 at T.145:2-11; DE 135-11. Covington cannot reasonably deny that its settlement is a form of contractual obligation, or that the complaint's references to contractual obligations could encompass a settlement once MSPA Claims learned of it. Indeed, the complaint even references "settlement[s]" when discussing how the CMS data is searched. DE 55, ¶ 41(a)(iv).

**Podhurst Orseck, P.A**.

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

Under these circumstances, the district court erred in refusing to consider the fact of the settlement as a separate basis for establishing Covington's primary payer status.

## B.    The District Court Also Erred In Granting Summary Judgment As To The Breach Of Contract Count

MSPA Claims also brings a breach of contract claim by way of subrogation against Covington under 42 C.F.R. § 411.24(e), which provides "a direct right of action to recover from any primary payer." *See* DE 55, ¶ 62; *see also* 42 U.S.C. § 1395y(b)(2)(B)(iv); 42 C.F.R. § 411.26(a). MAOs may assert a right to subrogation in the same manner traditional Medicare would. *See* 42 C.F.R. § 422.108(f).[15] MSPA Claims, as FHCP's assignee, is therefore subrogated to the insured's right of action against Covington.

The elements a plaintiff must prove to succeed on a claim under section 411.24(e) overlap with those of a private cause of action for double damages. *MSPA Claims 1, LLC v. Allstate Ins. Co.*, No. 17-cv-01349, 2019 WL 42305519, at *6 (N.D. Ill. Sept. 11, 2019) (identifying the elements as the exemplar's contractual relationship with the defendant and the defendant's failure to make payments under the policy).

---

[15] *See also MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 3420796, at *8 (C.D. Ill. July 13, 2018); *MAO-MSO Recovery II, LLC v. Mercury Gen.*, 2018 WL 3357493, at *11 (C.D. Cal. May 23, 2018); *MSPA Claims I, LLC v. Scottsdale Ins. Co.*, 2017 WL 3835879, *4 (S.D. Fla. June 30, 2017).

33

The district court granted summary judgment on this claim because it found "there is no medical coverage available under the … insurance policy." DE 170 at 45. That conclusion flowed from the court's mistaken assumption that Covington's one-year claims-notice provision is enforceable against a Medicare secondary payer's recovery action. *See* Part I(A)(1), *supra*. MSPA Claims marshaled sufficient competent evidence demonstrating Covington's obligation to pay for P.M.'s medical bills under both its policy, DE 131, ¶ 8; DE 135-4 at 8, and the settlement, DE 135, ¶¶ 19-20, DE 154, ¶ 20, DE 167 at 3, ¶ 5(h). Summary judgment on this claim was therefore inappropriate.

## II.  THE DISTRICT COURT ERRED IN DENYING PARTIAL SUMMARY JUDGMENT TO MSPA CLAIMS BY CONCLUDING COVINGTON HAD NOT WAIVED ITS RIGHT TO CHALLENGE THE AMOUNT OF REIMBURSEMENT

Because no party exhausted the MSP Act's administrative appeal procedure to challenge the amount of reimbursement, the amount is fixed and the Court lacks jurisdiction to review it. *See Humana Med. Plan, Inc. v. Reale*, 180 So. 3d 195, 201 (Fla. Dist. Ct. App. 2015). MSPA Claims moved for summary judgment to preclude Covington from asserting affirmative defenses challenging reimbursement amounts due to Covington's failure to exhaust administrative remedies. *See* DE 134 at 2; DE 116 at 12, 17 (asserting affirmative defenses 4, 35, and 36 to challenge reimbursement amounts for relatedness, reasonableness, and

34

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

necessity).  Contrary to the district court's determination, Covington itself had the ability and obligation to challenge the reimbursement amount administratively before it could seek judicial review of that amount, and it failed to do so.

### A.    This Court Lacks Subject-Matter Jurisdiction To Review Covington's Challenge to the Reimbursement Amount.

When an MAO makes a coverage decision and renders payment, that is an "organization determination."  *Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Central Ins. Co.*, 875 F.3d 584, 586 (11th Cir. 2017) ("The MAO's initial decision regarding coverage is classified as an 'organization determination.'"); *see* 42 U.S.C. §1395w-22(g)(1)(A) (defining "organization determinations" as "determinations regarding whether an [enrollee] is entitled to receive a health service … and the amount (if any) that the individual is required to pay with respect to such service"); 42 C.F.R. § 422.566(b)(2)(i) (organization determinations include "any determination made  by an [MAO] with respect to … [p]ayment for … health services furnished by a provider other than the [MAO] that the enrollee believes … are covered under Medicare").[16]

_____

[16] The organizational determination fixes the items and services at issue and amounts tied to that treatment, but it is not the ultimate amount of recovery owed by the primary payer.  42 U.S.C. 1395-w22(a)(4); 42 C.F.R. 411.31(b); *Bio-Med. Applications of Tennessee, Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 295 (6th Cir. 2011) (discussing the amount of outstanding bills versus conditional payments as the proper reference point for damages).  The briefing below has not addressed this issue, and it is not presented here.

35

Challenges to an organization determination are subject to the Medicare Act's judicial review and administrative exhaustion requirements.  *See Tenet Healthsystem*, 875 F.3d at 586-87; *Reale*, 180 So. 3d at 201-02.  The Act provides, in relevant part, that "[n]o findings of fact or decision of the [Secretary of Health and Human Services] shall be reviewed by any person, tribunal, or governmental agency except as herein provided."  42 U.S.C. § 405(h) (with 42 U.S.C. § 405(g), the "judicial review provisions").[17]  The judicial review provisions specify that it is only "after any final decision of the [Secretary of Health and Human Services]" that an individual may file a civil action.  § 405(g).  The Medicare Act's judicial review provisions are "the sole avenue for judicial review of all claims arising under the Medicare Act," *Heckler v. Ringer*, 466 U.S. 602, 614 (1984), including claims paid by MAOs under Part C, *see* 42 U.S.C. § 1395w-22(g)(5).  42 U.S.C. § 405(g).  The exhaustion of administrative remedies is thus a precondition to judicial review.

MSPA Claims' assignor, FHCP, made an organization determination when it made the conditional payments on behalf of P.M.  The district court faulted MSPA Claims for failing to point to the existence of an organization determination

---

[17] Section 405(h) and other enumerated provisions of the Social Security Act apply to the Medicare Act, including Part C, and references to the Commissioner of Social Security should be considered references to the Secretary of Health and Human Services.  *See* 42 U.S.C. § 1395ii; *Reale*, 180 So. 3d at 201 & n.7.

36

which Covington could appeal.  DE 170 at 35.  But evidence of FHCP's initial

coverage determination is well documented in the record.  *See* DE 55-1 (reflecting

P.M. diagnosis codes and injuries); DE 147-2 (demonstrating P.M.'s expanded

claims data, including billed amounts and dates of service and columns for the

diagnosis codes and for the procedure codes); DE 147-3, ¶¶ 15-20 (explaining how

FHCP transferred its electronic claims data and how that data demonstrates, among

other things, the amount FHCP charged); DE 135-1, ¶¶ 25-26 (same).

No party to FHCP's organization determination, including the beneficiary,

P.M., ever appealed.  As a result, the Court lacks subject-matter jurisdiction over

Covington's affirmative defense seeking to litigate the medical services rendered

to P.M.  *See Reale*, 180 So. 3d at 204-05 (collecting cases that conclude disputes

concerning reimbursement of conditional payments must be exhausted before an

enrollee invokes judicial review in federal court).  Covington's liability is thus

fixed, and it is barred from attacking the underlying medical bills for

reasonableness, relatedness, or necessity under section 627.736, Florida Statutes.

This Court's opinion in *Western Heritage* confirms that Covington cannot

now challenge the amount of the reimbursement.  There an MAO that made

payments on behalf of an enrollee sought reimbursement from the tortfeasor's

insurance carrier.  832 F.3d at 1231.  The MAO issued the enrollee an organization

determination but, "[a]lthough an administrative appeal process was available, *no*

37

*party* appealed [the MAO's] [o]rganization [d]etermination." *Id.* at 1232 (emphasis added). After the enrollee settled with the tortfeasor and its insurer, the MAO sued the tortfeasor's insurance carrier for reimbursement. *See id.* at 1232-33. The insurer argued that it had not failed to provide for payment or appropriate reimbursement to the MAO and also contested the amount of the MAO's reimbursement entitlement. *See id.* at 1239-40.

The Court rejected the insurer's ability to challenge the damages amount after concluding that the MAO could bring a private cause of action against the insurer for secondary payments under the MSP Act and determining that the insurer failed to provide for appropriate reimbursement. *See id.* at 1236-40. The Court explained that the MAO had issued an organization determination to the beneficiary and she "was entitled to administratively appeal that amount but did not." *Id.* at 1240. "The amount that [the MAO] could recover [was] therefore fixed, at least as to [the enrollee]. *See id.* Although the *Western Heritage* Court appeared to consider the hypothetical possibility in which the insurer could dispute the reimbursement amount, it did so only to criticize the insurer's challenge on substantive grounds. *See id.* Regardless, the Court affirmed summary judgment for the MAO and found it was entitled to recover the full amount. *See id.*

The district court read *Western Heritage* as having addressed only exhaustion by a Medicare beneficiary not a primary plan. *See* DE 170 at 37. But

**Podhurst Orseck, P.A**.

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    |    www.podhurst.com

there, as here, the relevant point is that *no party*—whether the beneficiary, the insurer, or anyone else—challenged the reimbursement amount. Both *Western Heritage* and this case involve an insurer collaterally challenging the amount of reimbursement. Covington is foreclosed from doing so, just as the insurer in *Western Heritage* was, because the reimbursement amount became fixed after the failure to administratively appeal.

Covington's challenge to the reimbursement amount had to proceed exclusively pursuant the Medicare Act's judicial review provisions before it could be aired in a federal court. *See, e.g.*, *Reale*, 180 So. 3d at 205. Because no party exhausted the Medicare Act's administrative requirements, the Court lacks jurisdiction to hear that challenge now, and the reimbursement amount is fixed. MSPA Claims is therefore entitled to partial summary judgment on the issue of the amount of the reimbursement for P.M.'s medical expenses.

## B.    The Administrative Exhaustion Requirement Applies To A Primary Payer Like Covington.

Lack of jurisdiction aside, the district court concluded that "nothing in the MSP Act's regulations … create[s] a federal administrative remedy for an insurer like Covington to make this challenge." DE 170 at 35. That reading is inconsistent with the text of the statute and its implementing regulations.

The appeals provision from Part C of the Medicare Act empowers an enrollee to seek administrative review if dissatisfied with the "failure to receive

39

any health service … and [to receive such services] *at no greater charge than the enrollee believes [she] is required to pay*." *See* 42 U.S.C. § 1395w-22(g)(5) (emphasis added). The judicial review provisions, 42 U.S.C. §§ 405(g), (h), are applicable to Part C's appeals provision, and indeed, the entire Medicare Act. *See Tenet Healthsystem*, 875 F.3d at 586-87; *Reale*, 180 So. 3d at 201-02. Thus, it follows, the judicial review provisions also apply to organization determinations by MAOs. Moreover, the implementing regulations for Medicare Part C's appeal provision contemplate that an insurer is among the parties that can challenge an MAO's organization determination. *See* 42 C.F.R. §§ 422.574, 422.566, 422.582; *see also* 63 Fed. Reg. 34968-01, 35021 (June 26, 1998) ("'[O]rganization determinations' are subject to the reconsideration and other appeal requirements under section [42 U.S.C. § 1395w-22](g).").

These statutory and regulatory provisions thus bear out that (1) primary plans can and must administratively appeal the organization determination in order to invoke the jurisdiction of a federal court to challenge the subject matter of the determination, and (2) the appellate process is available for review of MAO organization determinations and not just determinations by the Secretary, as explained below.

On the first point, the district court wrongly determined that only beneficiaries, and not private plans, have formal appeal rights. *See* DE 170 at 35-

36.  The regulations, however, explicitly extend an appeal or a "reconsideration" of an organization determination to the "*parties* to the organization determination," *see* 42 C.F.R. § 422.582(d), as opposed to only those individuals who can "*request* an organization determination."  *See* DE 170 at 35 (emphasis added) (observing that "'only enrollees, providers furnishing services to enrollees, or enrollee's estates can request an organization determination'") (quoting 42 C.F.R. § 422.566). The "parties to an organization determination" comprise both the individuals who can request one as well as "[a]n assignee of the enrollee" and—critically—"[a]ny other … entity … determined to have an appealable interest in the proceeding."  42 C.F.R. § 422.574.

A primary payer like Covington is surely an "entity" with "an appealable interest in the proceeding."  After all, FHCP's determination about whether P.M.'s treatment was covered under the Medicare regulations affects the treatment for which Covington would be primarily responsible.  Thus, before Covington could challenge that treatment in federal court, it was obligated to have sought reconsideration of the organization determination administratively.  Indeed, a "party to an organization determination … *must* ask for reconsideration of the determination by making a written request to the MA organization that made the organization determination."  § 422.582(a) (emphasis added).

41

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

The MSP Act and its regulations also make clear that the administrative remedy applies to an MAO's decisions and not just to the Secretary's determinations, as the district court opined.  *See* DE 170 at 36 ("Congress instead made the administrative remedy available only to the Secretary's decisions …."). This reasoning misses that Medicare Part C contains its own distinct appeals provision, subject to the judicial review provisions' exhaustion and other requirements, through which enrollees and other interested parties may challenge an MAO determination.  The Part C regulations recognize that an "organization determination" is as a "determination made by an MA organization …." § 422.566(b).

The district court's analysis also ignores that courts have "consistently and overwhelmingly held that disputes concerning reimbursement of conditional payments" by MAOs "must be exhausted through the administrative appeals process before [a party] invokes judicial review in a federal court."  *Reale*, 180 So. 3d at 204-05 (collecting cases); *see also Tenet Healthsystems*, 875 F.3d at 586-87. Moreover, given the functional parity between MAOs and Medicare, it would be nonsensical to require a plan to appeal organization determinations by the Secretary but not by an MAO.[18]

---

[18] *But cf. Tenet Healthsystem*, 875 F.3d at 591 (noting HHS' concern about the burden of administrative appeals).

42

The district court misread the statute, relying in part on *Ocean Harbor Casualty Insurance v. MSPA Claims 1*, 261 So. 3d 637 (Fla. Dist. Ct. App. 2018), and finding that the regulations prescribing administrative remedies do not apply to Medicare Part C or to actions by MAOs.  *See* DE 170 at 36-38.  *Ocean Harbor* determined that Congress had excluded MAOs from the provision governing the "[r]ight of appeal for secondary payer determinations relating to … no-fault insurance" in section 1395y(b)(2)(B)(viii).  Specifically, *Ocean Harbor* noted that during an applicable notice and comment period, the Secretary declined to make the regulations applicable to determinations by MAOs under Part C and explained that the judicial review provisions gave only beneficiaries and not "applicable plans" formal appeal rights.  *Ocean Harbor*, 261 So. 3d at 647; *see also* 42 C.F.R. § 405.900.

Crucially, this analysis—quoted extensively by the district court—focused on the appeals provision in *section 1395y* rather than Part C's distinct appeals provision in *section 1395w-22*.  *See* DE 170 at 36-37 (quoting *Ocean Harbor*, 261 So. 3d at 647).  *Ocean Harbor*'s only discussion of the Part C regulations cited by the plaintiff in that case summarily concluded that they "deal only with claims by an enrollee against an MAO."  261 So. 3d at 646.  However, the regulations promulgated under Part C *do* provide a primary plan, as a "part[y] to an organization determination," with the power to request a standard reconsideration

of the MAO's decision.  *See* 42 U.S.C. 1395w-22(g)(5); 42 C.F.R. § 422.582(a).

That review process is subject to the requirements of the Medicare Act's judicial

review provisions, including the administrative exhaustion requirement.  *See* 42

U.S.C. 1395w-22(g)(5); 63 FR 34968-01, 35021.

In *Tenet Healthsystem*, this Court recognized that the Medicare Part C

provisions make applicable the exclusive administrative process from the judicial

review provisions (and, it follows, the administrative exhaustion requirement) to

denials by MAOs under Medicare Part C.  875 F.3d at 587 ("If any one of the

foregoing parties wishes to challenge any aspect of an organization determination,

that party must exhaust its administrative remedies by following a specific

procedure for administrative appeal prescribed by the Medicare Act and its

implementing regulations.") (citing 42 U.S.C. § 1395w-22(g); 42 C.F.R.

§§ 422.560-422.622).

This analysis demonstrates that the district court lacked jurisdiction to

consider any challenge of the treatment at issue and that it erred in interpreting the

MSP Act to relieve insurers like Covington of the obligation to follow the Act's

administrative exhaustion requirement.  Either error warrants reversal of the ruling

denying partial summary judgment to MSPA Claims.

**Podhurst Orseck, P.A**.

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

III.  **CASE NO. 21-12439:  THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO UNITED AUTO BECAUSE FEDERAL LAW PREEMPTS FLORIDA'S PRE-SUIT NOTICE REQUIREMENT**

The district court's ruling in *United Auto* was erroneous because the Florida no-fault statute's pre-suit demand provision is inapplicable.  Aside from there being a real question whether a federal action to recover conditional payments even falls within that provision,[19] it would be preempted if it did.

The court unwittingly contradicted this Court's prior rejection of the argument that an MAO must satisfy any pre-suit notice or demand requirement before filing suit under the MSP Act's private cause of action.  *See MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1319 (11th Cir. 2020). While it may not be evident from the face of the *ACE* opinion, it is clear from the briefing that the Court in that case considered and rejected the precise rationale that the district court embraced—that a Florida plaintiff must satisfy state statutory pre-suit demand requirements, as well as contractual ones, before filing a federal lawsuit seeking reimbursement of Medicare conditional payments.

Specifically, several of the defendants in that consolidated appeal argued that the plaintiffs "were required to comply with the pre-suit notice requirements,

---

[19]  An MSP Act claim is not even an "action for benefits under this section," *i.e.*, section 627.736(10)(a), Fla. Stat.  MSP Recovery's claim instead seeks to recoup federally authorized conditional payments.

under both sections 627.736(10)[, Florida Statutes] and the terms of the insurance policies."[20]  The Court addressed the argument that "Plaintiffs failed to comply with their supposed pre-suit notice requirements," 974 F.3d at 1318, and rejected it, *id.* at 1319.  The Court wrote, flatly:  "Defendants point to no law that obligated Plaintiffs to submit 'recovery demand letters' or otherwise provide advance notice of their intent to bring a claim."  *Id.*  To the contrary, the Court observed that the applicable MSP regulation expressly "contemplates that primary payers' liability arises" from "'the demonstration of primary payer responsibilities,'" which may come from "constructive knowledge," something that can arise without a notice letter.  *Id.* (quoting 42 C.F.R. § 411.22).  In other words, the federal right of action is conditioned upon the defendant primary payer's knowledge; the MSP Act imposes no pre-suit demand obligation on the plaintiff.  *Id.* (explaining only that "primary payers must have knowledge that they owed a primary payment before a

---

[20] Answer Br. of Liberty Mut. Fire Ins. Co. in *ACE*, 2019 WL 1147159, at *52 (11th Cir.), filed Mar. 8, 2019; *see also* Supp'l Br. of Liberty Mut. Fire Ins. Co. in Resp. to Amicus United States in *ACE*, 2019 WL 1147159, at *11-14 (11th Cir.), filed July 6, 2020 (reiterating the argument and invoking *Ocean Harbor*, 261 So. 3d at 644-45); Answer Br. of Auto-Owners Ins. Co., et al., 2019 WL 114155, at *28-29 (11th Cir.), filed Mar. 8, 2019 (also invoking § 627.736, Fla. Stat., and *Ocean Harbor*).

**Podhurst Orseck, P.A**.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

party can claim double damages under the Medicare Secondary Payer Act").[21]

Implicit in the reasoning of *ACE* is that a state law pre-suit demand requirement, or one contained in a contract, is impliedly preempted by federal law. Although the Court did not express this rationale, it follows from the Court's rejection of arguments predicated upon section 627.736(10), Florida Statutes, contractual demand provisions, and *Ocean Harbor*. When the district court rejected MSP Recovery's reliance on *ACE* in support of its preemption argument by noting that *ACE* had not "discussed section 627.736(10), Florida Statutes," DE 153 at 6, it evidently was unaware that the defendants in *ACE* presented the same arguments regarding the Florida notice statute that United Auto did here.

Even if this Court is not satisfied that *ACE* already resolved the pre-suit notice issue, the district court also erroneously dismissed MSP Recovery's reliance on this Court's decision in *Kingsway* as irrelevant to the question of whether the Florida statute is preempted by the MSP Act. DE 153 at 6. This conclusion miscomprehends the significance of *Kingsway* to the preemption analysis.

---

[21] This view is consistent with that advanced by the Department of Health and Human Services in an amicus brief solicited by the Court in *ACE*, which this Court gave *Skidmore* deference. *See* Br. for the U.S. as Amicus Curiae in *ACE*, 2020 WL 5884556, at *18 n.4 (filed June 8, 2020) (rejecting as "incorrect" Auto-Owners' "asserti[on] that the requirement to reimburse Medicare is not triggered unless Medicare sends a demand letter," since a plan's "constructive knowledge of a payment" is all that is required).

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346                    www.podhurst.com

Both *Kingsway* and this Court's earlier decision in *Western Heritage* are crucial to understanding the scope of the relevant federal law, *i.e.*, the limitations on an MAO's right to bring an MSP Act claim, that Congress has given preemptive effect over "any State law or regulation." 42 U.S.C. § 1395w-26(b)(3). As this Court recently reiterated, "the purpose of Congress is the ultimate touchstone in every pre-emption case … which is discerned from the language of the pre-emption statute and the statutory framework surrounding it." *Marrache*, 17 F.4th at 1094. The MSP Act private cause of action states:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

42 U.S.C. § 1395y(b)(3)(A).

As this Court recognized in *Western Heritage* and *Kingsway*, when examining the requirements under the MSP Act that an MAO must comply with to sue a primary plan under section 1395y(b)(3)(A), Congress did not condition the filing of a private right of action on any pre-suit written notice requirement. No such requirement appears in the plain text of this statutory provision, nor has this Court found any other provision of the MSP Act to impose any such prerequisite. *See ACE*, 974 F.3d at 1319 ("Defendants point to no law that obligated Plaintiffs to

48

submit 'recovery demand letters' or otherwise provide advance notice of their intent to bring a claim.").

This Court held in *Western Heritage* that "an MAO may avail itself of the MSP Act private cause of action when a primary plan fails to make primary payment or to reimburse the MAO's secondary payment," which "causes the MAO an injury in fact."  832 F.3d at 1238.  The Court found it sufficient that "as a settling party in tort litigation, Western had the ability to discern the precise nature of [the beneficiary's] health insurance coverage," including that it was a Medicare payment.  *Id.*  Nothing more than this constructive knowledge was required. Imposing a state-law formal demand requirement would conflict with this low federal statutory threshold to the federal right of action.

Relatedly, in *Kingsway*, this Court considered whether an MAO "must comply" with the MSP Act's claims-filing provision "as a prerequisite to filing suit" under the MSP Act's private cause of action and held that "compliance with [the claims-filing provision's] terms is not a precondition to filing suit."  950 F.3d at 766-67, 776.  In reaching that conclusion the Court initially explained that it has "recognized *only two limits* on the private cause of action."  *Id.* at 771 (emphasis added).  The first "prerequisite to filing a private lawsuit under § 1395y(b)(3)(A)" is the demonstration "in some way prior to the suit for reimbursement" of the primary payer's responsibility for payment of the item or service for which the

49

MAO conditionally paid.  *Id.*  The primary payer's constructive knowledge satisfies this prerequisite.  *ACE*, 974 F.3d at 1319; *W. Heritage*, 832 F.3d at 1239. It would be inconsistent to require actual knowledge through a pre-suit demand requirement.  The second (and only other) limit is that the private cause of action can be invoked to sue only primary payers, not other entities such as medical providers.  *Kingsway*, 950 F.3d at 771.  Having identified these two limits, the *Kingsway* Court concluded that the permissive "may" in the MSP Act's claims-filing provision "demonstrates that Congress didn't mean to condition … the right to file suit to recover conditional payments" on compliance with a claims-filing provision.  *Id.* at 773.

In sum, the statutory framework Congress adopted for seeking reimbursement of Medicare secondary payments from primary payers through a private cause of action does not envision any sort of written notice precondition like the "written notice of an intent to initiate litigation" that section 627.736(10), Florida Statutes, mandates.  The absence of such a federal requirement is significant given Congress's express intent that the statutory provisions governing MAOs "*shall supersede any State law or regulation* (other than State licensing laws or State laws relating to plan solvency)." 42 U.S.C. § 1395w-26(b)(3)

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

(emphasis added).[22]   One of the referenced "standards" that expressly supersedes state law is the statutory provision that itself states that where an MAO is a secondary payer "pursuant to section 1395y(b)(2)" it may charge primary payers, "[n]otwithstanding any other provision of law."  § 1395w-22(a)(4).

The related federal regulations likewise reaffirm the supremacy of an MAO's rights as a secondary payer to seek repayment from a primary payer.  This point is made explicitly in 42 C.F.R. § 422.108(f), which states

> [T]he rules established under this section supersede any State laws, regulations, contract requirements, or other standards that would otherwise apply to MA plans. *A State cannot take away an MA organization's right under Federal law and the MSP regulations to bill, or to authorize providers and suppliers to bill, for services for which Medicare is not the primary payer.* The MA organization will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises …

(emphasis added).

---

[22] Section 1395w-26(b)(3) states in full that:

> The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to M[edicare] A[dvantage] plans which are offered by M[edicare] A[dvantage] organizations under this part.

*See also* 42 C.F.R. § 422.402 (same).  The "standards established under this part" are the statutory provisions governing the Medicare Advantage Program, which are contained in Part C of Title 42 of the U.S. Code, namely 42 U.S.C. §§ 1395w-21 through 1395w-29.

51

Requiring an MAO to comply with Florida's pre-suit notice statute would impair its federal "right … to bill … for services for which Medicare is not the primary payer" by subjecting it to varied written notice requirements that the MSP Act's private cause of action does not impose. *See* 42 C.F.R. § 422.108(f); *see also Marrache*, 17 F.4th at 1094 ("[F]ederal regulations have no less pre-emptive effect than federal statutes.").  Moreover, recognizing that Congress intended to prohibit MAOs from bearing the burden of providing written pre-suit notice to primary payers under the MSP Act's private cause of action is consistent with the primary-secondary reimbursement scheme.  Congress set up a structure that incentivizes reimbursement on the primary plan's own initiative when it has an obligation to pay.  "[A] primary plan … *shall* reimburse … if it is demonstrated that such primary plan has or had a responsibility to make payment."  42 U.S.C. § 1395y(b)(2)(B)(ii) (emphasis added).  As this Court acknowledged, that demonstration may come from "constructive knowledge," something that can arise without a notice letter.  *ACE,* 974 F.3d at 1319 (quoting 42 C.F.R. § 411.22).  Because it is not up to an MAO to advise primary plans of their obligation to provide for reimbursement, it makes sense that an MAO "may initiate recovery as soon as it learns that payment has been made or could be made under … any liability or no-fault insurance … plan."  42 C.F.R. § 411.24(b) (made applicable to MAOs via 42 C.F.R. § 422.108(f)).

**Podhurst Orseck, P.A**.

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

The Florida court's decision in *Ocean Harbor* does not address the precise issue of whether the pre-suit notice requirement of section 627.736(10), Florida Statutes, is preempted by the MSP Act that is presented in this case. The plaintiffs in *Ocean Harbor* raised a much broader argument of whether "the Secondary Payer Act preempted *most* of Florida's no-fault laws through § 1395y(b)(3)(A)." 261 So. 3d at 645 (emphasis added). The court in *Ocean Harbor* rejected the plaintiffs' argument "to broadly preempt State insurance law," because doing so would necessarily touch upon "whether a compensation carrier has a responsibility to make payment with respect to an item or service," *id.* at 645 (cleaned up), in "the first instance," *id.* at 644, which responsibility the plaintiffs did not dispute that Florida's no-fault statutes and policies established, *id.* In other words, those specific provisions of Florida's no-fault laws which govern when "payment has been made or can reasonably be expected to be made … under no fault insurance," are part of the MSP Act's primary-secondary payment structure and determine whether repayment is required when an MAO has made a conditional payment. 42 U.S.C. § 1395y(b)(2)(A).

The preemption argument in this case is more narrowly gauged, targeted solely upon one Florida statutory provision that has nothing to do with an insurer's responsibility "to make the payment in the first instance under Florida no-fault law," *Ocean Harbor* 261 So. 3d at 644. Thus, this case presents a different focus

than the court in *Ocean Harbor* confronted, or for that matter than in any of the other cases the district court referenced.[23]  This Court can readily conclude that the MSP Act preempts Florida's pre-suit written-notice requirement without displacing those provisions of Florida's no-fault statutes and policies that speak to whether "payment has been made or can reasonably be expected to be made," § 1395y(b)(2)(A)(ii).

## CONCLUSION

For the foregoing reasons, in *Covington* the summary judgment should be reversed and partial summary judgment entered for MSPA Claims, and in *United Auto*, the summary judgment should be reversed.

Dated:  December 13, 2021

*Respectfully submitted,*

*/s/  Stephen F. Rosenthal*

Frank C. Quesada                                Stephen F. Rosenthal
Fla. Bar No. 29411                              Fla. Bar No. 131458

---

[23] *See* DE 153 at 5 & n.5.  *MSPA Claims 1, LLC v. First Acceptance Insurance Company* merely cited to *Ocean Harbor* in rejecting the same broad argument that the MSP Act "does not eliminate the terms and conditions of the underlying State no fault law."  380 F.Supp.3d 1235, 1241 (M.D. Fla 2019).  The Fifth Circuit's decision in *Caldera v. Insurance Company of the State of Pennsylvania* presented a similar concern regarding an argument based on pre-emption of a state worker's compensation law.  716 F.3d 861, 864-65 (5th Cir. 2013).  Neither *Allstate* nor *Western Heritage* addresses whether an MAO must comply with section 627.736(10), Florida Statutes, before bringing a private cause of action, let alone whether the MSP Act would pre-empt this state statutory pre-suit notice requirement.

54

Michael O. Mena
Fla. Bar No. 10664
Charles E. Whorton
Fla. Bar No. 46894
Gino Moreno
Fla. Bar No. 112099
Arlenys Perdomo
Fla. Bar No. 115561
Francesco A. Zincone
Fla. Bar. No. 100096
**MSP RECOVERY LAW FIRM**
2701 S. LeJeune Road, 10th Floor
Coral Gables, FL 33134
(305) 614-2222

Ramon A. Rasco
Fla. Bar No. 617334
Christina H. Martinez
Fla. Bar No. 1029432
**PODHURST ORSECK, P.A.**
SunTrust International Center
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
(305) 358-2800

## CERTIFICATE OF COMPLIANCE

Counsel for Appellants hereby certifies that the type style utilized in this brief is 14 point Times New Roman proportionally spaced, and there are 12,569 words in the brief.

*s/    Stephen F. Rosenthal*
Stephen F. Rosenthal

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of December, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*s/    Stephen F. Rosenthal*
Stephen F. Rosenthal
Fla. Bar No. 131458

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

# ADDENDUM

## ADDENDUM TABLE OF CONTENTS

**Statutes**                                                                     **PAGE**

29 U.S.C. § 1002(1) ...................................................................................1

42 U.S.C. § 405(g) ....................................................................................1

42 U.S.C. § 405(h) ....................................................................................2

42 U.S.C. § 1395ii .....................................................................................3

42 U.S.C. § 1395w-22(a)(4) ......................................................................3

42 U.S.C. §1395w-22(g)(1)(A) ..................................................................4

42 U.S.C. § 1395w-22(g)(5) ......................................................................4

42 U.S.C. § 1395w-26(b)(3) ......................................................................5

42 U.S.C. § 1395y(b)(2) ............................................................................5

42 U.S.C. § 1395y(b)(2)(A) .......................................................................5

42 U.S.C. § 1395y(b)(2)(B)(i) ....................................................................6

42 U.S.C. § 1395y(b)(2)(B)(ii) ...................................................................7

42 U.S.C. § 1395y(b)(2)(B)(iii) ..................................................................7

42 U.S.C. § 1395y(b)(2)(B)(iv) ..................................................................8

42 U.S.C. § 1395y(b)(2)(B)(vi) ..................................................................8

42 U.S.C. § 1395y(b)(2)(B)(viii) ................................................................8

42 U.S.C. § 1395y(b)(3)(A) ........................................................................9

§ 627.736(10), Florida Statutes .................................................................9

## **Regulations**

29 C.F.R. § 2560.503-1(b) ................................................................11

42 C.F.R. § 405.900 ........................................................................11

42 C.F.R. § 411.22(b)(3) ..................................................................12

42 C.F.R. § 411.24(e) .......................................................................12

42 C.F.R. § 411.24(f)(1) ...................................................................12

42 C.F.R. § 411.26(a) .......................................................................12

42 C.F.R. § 422.108(f) ......................................................................13

42 C.F.R. § 422.402 ..........................................................................13

42 C.F.R. § 422.566(b) ......................................................................13

42 C.F.R. § 422.566(c) ......................................................................13

42 C.F.R. § 422.574 ..........................................................................15

42 C.F.R. § 422.582(a) ......................................................................15

42 C.F.R. § 422.582(b) ......................................................................15

42 C.F.R. § 422.582(d) ......................................................................15

## STATUTES

### 29 U.S.C. § 1002(1)

### Definitions

(1)  The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

### 42 U.S.C. §§ 405(g), (h)

### Evidence, procedure, and certification for payments

#### (g) Judicial review

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or

1

without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based. Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions. Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.

## (h) Finality of Commissioner's decision

The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be

brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

## 42 U.S.C. § 1395ii

## Application of certain provisions of subchapter II

The provisions of sections 406 and 416(j) of this title, and of subsections (a), (d), (e), (h), (i), (j), (k), and (l) of section 405 of this title, shall also apply with respect to this subchapter to the same extent as they are applicable with respect to subchapter II, except that, in applying such provisions with respect to this subchapter, any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively.

## 42 U.S.C. § 1395w-22(a)(4)

## Benefits and beneficiary protections

### (a) Basic benefits

. . . .

### (4) Organization as secondary payer

Notwithstanding any other provision of law, a Medicare+Choice organization may (in the case of the provision of items and services to an individual under a Medicare+Choice plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—

(A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or

**(B)** such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

## 42 U.S.C. § 1395w-22(g)(1)(A), (g)(5)

**Benefits and beneficiary protections**

**(g) Coverage determinations, reconsiderations, and appeals**

**(1) Determinations by organization**

**(A) In general**

A Medicare+Choice organization shall have a procedure for making determinations regarding whether an individual enrolled with the plan of the organization under this part is entitled to receive a health service under this section and the amount (if any) that the individual is required to pay with respect to such service. Subject to paragraph (3), such procedures shall provide for such determination to be made on a timely basis.

**. . . .**

**(5) Appeals**

An enrollee with a Medicare+Choice plan of a Medicare+Choice organization under this part who is dissatisfied by reason of the enrollee's failure to receive any health service to which the enrollee believes the enrollee is entitled and at no greater charge than the enrollee believes the enrollee is required to pay is entitled, if the amount in controversy is $100 or more, to a hearing before the Secretary to the same extent as is provided in section 405(b) of this title, and in any such hearing the Secretary shall make the organization a party. If the amount in controversy is $1,000 or more, the individual or organization shall, upon notifying the other party, be entitled to judicial review of the Secretary's final decision as provided in section 405(g) of this title, and both the individual and the organization shall be entitled to be parties to that judicial review. In applying subsections (b) and (g) of section 405 of this title as provided in this paragraph, and in applying section 405(l) of this title thereto, any reference therein to the Commissioner of

4

Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively. The provisions of section 1395ff(b)(1)(E)(iii) of this title shall apply with respect to dollar amounts specified in the first 2 sentences of this paragraph in the same manner as they apply to the dollar amounts specified in section 1395ff(b)(1)(E)(i) of this title.

## 42 U.S.C. § 1395w-26(b)(3)

**Establishment of standards**

   **(b)Establishment of other standards**

      **. . . .**

      **(3) Relation to State laws**

      The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.

## 42 U.S.C. § 1395y(b)(2)(A)

**Exclusions from coverage and medicare as secondary payer**

   **(b) Medicare as secondary payer**

   **. . . .**

   **(2) Medicare secondary payer**

      **(A) In general**

      Payment under this subchapter may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that—

**(i)** payment has been made, or can reasonably be expected to be made, with respect to the item of service as required under paragraph (1), or

**(ii)** payment has been made2 or can reasonably be expected to be made2 under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.

> In this subsection, the term "primary plan" means a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies. An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part.

## 42 U.S.C. § 1395y(b)(2)(B)(i); (ii); (iii); (iv); (vi); (viii)

**(b) Medicare as secondary payer**

**. . . .**

**(2) Medicare secondary payer**

**. . . .**

**(B) Conditional payment**

**(i) Authority to make conditional payment**

The Secretary may make payment under this subchapter with respect to an item or service if a primary plan described in subparagraph (A)(ii)3 has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (as determined in accordance with regulations). Any such payment by the Secretary shall be conditioned on reimbursement to the appropriate Trust Fund in accordance with the succeeding provisions of this subsection.

### (ii) Repayment required

Subject to paragraph (9), a primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service. A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means. If reimbursement is not made to the appropriate Trust Fund before the expiration of the 60-day period that begins on the date notice of, or information related to, a primary plan's responsibility for such payment or other information is received, the Secretary may charge interest (beginning with the date on which the notice or other information is received) on the amount of the reimbursement until reimbursement is made (at a rate determined by the Secretary in accordance with regulations of the Secretary of the Treasury applicable to charges for late payments).

### (iii) Action by United States

In order to recover payment made under this subchapter for an item or service, the United States may bring an action against any or all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a primary plan. The United States may, in accordance with paragraph (3)(A) collect double damages against any such entity. In addition, the United States may recover under this clause from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity. The United States may not recover from a third-party administrator under this clause in cases where the third-party administrator would not be able to recover the amount at issue from the employer or group health plan and is not employed by or under contract with the employer or group health plan at the time the action

for recovery is initiated by the United States or for whom it provides administrative services due to the insolvency or bankruptcy of the employer or plan. An action may not be brought by the United States under this clause with respect to payment owed unless the complaint is filed not later than 3 years after the date of the receipt of notice of a settlement, judgment, award, or other payment made pursuant to paragraph (8) relating to such payment owed.

**(iv) Subrogation rights**

The United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan

**. . . .**

**(vi) Claims-filing period**

Notwithstanding any other time limits that may exist for filing a claim under an employer group health plan, the United States may seek to recover conditional payments in accordance with this subparagraph where the request for payment is submitted to the entity required or responsible under this subsection to pay with respect to the item or service (or any portion thereof) under a primary plan within the 3-year period beginning on the date on which the item or service was furnished.

**. . . .**

**(viii) Right of appeal for secondary payer determinations relating to liability insurance (including self-insurance), no fault insurance, and workers' compensation laws and plans**

The Secretary shall promulgate regulations establishing a right of appeal and appeals process, with respect to any determination under this subsection for a payment made under this subchapter for an item or service for which the Secretary is seeking to recover conditional payments from an applicable plan (as defined in paragraph (8)(F)) that is a primary plan under subsection (A)(ii), under which the applicable

8

plan involved, or an attorney, agent, or third party administrator on behalf of such plan, may appeal such determination. The individual furnished such an item or service shall be notified of the plan's intent to appeal such determination.

## 42 U.S.C. § 1395y(b)(3)(A)

**(b) Medicare as secondary payer**

**. . . .**

**(3) Enforcement**

**(A) Private cause of action**

There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

## § 627.736(10), Florida Statutes (2018)

**Required personal injury protection benefits; exclusions; priority; claims.—**

**(10)    DEMAND LETTER.—**

(a)    As a condition precedent to filing any action for benefits under this section, written notice of an intent to initiate litigation must be provided to the insurer. Such notice may not be sent until the claim is overdue, including any additional time the insurer has to pay the claim pursuant to paragraph (4)(b).

(b)    The notice must state that it is a "demand letter under s. 627.736" and state with specificity:

1.    The name of the insured upon which such benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the insured.

2.    The claim number or policy number upon which such claim was originally submitted to the insurer.

3.    To the extent applicable, the name of any medical provider who rendered to an insured the treatment, services, accommodations, or supplies that form the basis of such claim; and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A completed form satisfying the requirements of paragraph (5)(d) or the lost-wage statement previously submitted may be used as the itemized statement. To the extent that the demand involves an insurer's withdrawal of payment under paragraph (7)(a) for future treatment not yet rendered, the claimant shall attach a copy of the insurer's notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and medically necessary.

(c)    Each notice required by this subsection must be delivered to the insurer by United States certified or registered mail, return receipt requested. Such postal costs shall be reimbursed by the insurer if requested by the claimant in the notice, when the insurer pays the claim. Such notice must be sent to the person and address specified by the insurer for the purposes of receiving notices under this subsection. Each licensed insurer, whether domestic, foreign, or alien, shall file with the office the name and address of the designated person to whom notices must be sent which the office shall make available on its Internet website. The name and address on file with the office pursuant to s. 624.422 is deemed the authorized representative to accept notice pursuant to this subsection if no other designation has been made.

(d)    If, within 30 days after receipt of notice by the insurer, the overdue claim specified in the notice is paid by the insurer together with applicable interest and a penalty of 10 percent of the overdue amount paid by the insurer, subject to a maximum penalty of $250, no action may be brought against the insurer. If the demand involves an insurer's withdrawal of payment under paragraph (7)(a) for future treatment not yet rendered, no action may be brought against the insurer if, within 30 days after its receipt of the notice, the insurer mails to the person filing the notice a written statement of the insurer's agreement to pay for such treatment in accordance with the notice and to pay a penalty of 10 percent, subject to a maximum penalty of $250, when it pays for such future treatment in accordance with the requirements of this section. To the extent the insurer determines not to pay any amount demanded, the penalty is not payable in any subsequent action. For purposes of this subsection, payment or the insurer's agreement shall be treated

as being made on the date a draft or other valid instrument that is equivalent to payment, or the insurer's written statement of agreement, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery. The insurer is not obligated to pay any attorney fees if the insurer pays the claim or mails its agreement to pay for future treatment within the time prescribed by this subsection.

(e)    The applicable statute of limitation for an action under this section shall be tolled for 30 business days by the mailing of the notice required by this subsection.

## REGULATIONS

**29 C.F.R. § 2560.503-1(b)**

(b) Obligation to establish and maintain reasonable claims procedures. Every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations (hereinafter collectively referred to as claims procedures). The claims procedures for a plan will be deemed to be reasonable only if— [subparagraphs (1)-(7) omitted].

**42 C.F.R. § 405.900**

**Basis and scope.**

(a) Statutory basis. This subpart is based on the following provisions of the Act:

(1) Section 1869(a) through (e) and (g) of the Act.

(2) Section 1862(b)(2)(B)(viii) of the Act.

(b) Scope. This subpart establishes the requirements for appeals of initial determinations for benefits under Part A or Part B of Medicare, including the following:

(1) The initial determination of whether an individual is entitled to benefits under Part A or Part B. (Regulations governing reconsiderations of these initial determinations are at 20 CFR, part 404, subpart J).

(2) The initial determination of the amount of benefits available to an individual under Part A or Part B.

(3) Any other initial determination relating to a claim for benefits under Part A or Part B, including an initial determination made by a quality improvement organization under section 1154(a)(2) of the Act or by an entity under contract with the Secretary (other than a contract under section 1852 of the Act) to administer provisions of titles XVIII or XI of the Act.

## 42 C.F.R. § 411.22(b)(3)

**Reimbursement obligations of primary payers and entities that received payment from primary payers.**

(b) A primary payer's responsibility for payment may be demonstrated by—

(3) By other means, including but not limited to a settlement, award, or contractual obligation.

## 42 C.F.R. §§ 411.24(e), (f)(1)

**Recovery of conditional payments.**

(e) Recovery from primary payers. CMS has a direct right of action to recover from any primary payer.

(f) Claims filing requirements.

(1) CMS may recover without regard to any claims filing requirements that the insurance program or plan imposes on the beneficiary or other claimant such as a time limit for filing a claim or a time limit for notifying the plan or program about the need for or receipt of services.

## 42 C.F.R. § 411.26(a)

**Subrogation and right to intervene.**

(a) Subrogation. With respect to services for which Medicare paid, CMS is subrogated to any individual, provider, supplier, physician, private insurer, State agency, attorney, or any other entity entitled to payment by a primary payer.

**42 C.F.R. § 422.108(f)**

**Medicare secondary (MSP) procedures.**

(f) MSP rules and State laws. Consistent with § 422.402 concerning the Federal preemption of State law, the rules established under this section supersede any State laws, regulations, contract requirements, or other standards that would otherwise apply to MA plans. A State cannot take away an MA organization's right under Federal law and the MSP regulations to bill, or to authorize providers and suppliers to bill, for services for which Medicare is not the primary payer. The MA organization will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter.

**42 C.F.R. § 422.402**

The standards established under this part supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to the MA plans that are offered by MA organizations.

**42 C.F.R. § 422.566(b); (c)**

**Organization determinations.**

(b) Actions that are organization determinations. An organization determination is any determination made by an MA organization with respect to any of the following:

(1) Payment for temporarily out of the area renal dialysis services, emergency services, post-stabilization care, or urgently needed services.

13

(2) Payment for any other health services furnished by a provider other than the MA organization that the enrollee believes—

(i) Are covered under Medicare; or

(ii) If not covered under Medicare, should have been furnished, arranged for, or reimbursed by the MA organization.

(3) The MA organization's refusal to provide or pay for services, in whole or in part, including the type or level of services, that the enrollee believes should be furnished or arranged for by the MA organization.

(4) Reduction, or premature discontinuation, of a previously authorized ongoing course of treatment.

(5) Failure of the MA organization to approve, furnish, arrange for, or provide payment for health care services in a timely manner, or to provide the enrollee with timely notice of an adverse determination, such that a delay would adversely affect the health of the enrollee.

(c) Who can request an organization determination.

(1) Those individuals or entities who can request an organization determination are—

(i) The enrollee (including his or her representative);

(ii) Any provider that furnishes, or intends to furnish, services to the enrollee; or

(iii) The legal representative of a deceased enrollee's estate.

(2) Those who can request an expedited determination are—

(i) The enrollee (including his or her representative); or

(ii) A physician (regardless of whether the physician is affiliated with the MA organization).

14

**42 C.F.R. § 422.574**

**Parties to the organization determination.**

The parties to the organization determination are—

(a) The enrollee (including his or her representative);

(b) An assignee of the enrollee (that is, a physician or other provider who has furnished a service to the enrollee and formally agrees to waive any right to payment from the enrollee for that service);

(c) The legal representative of a deceased enrollee's estate; or

(d) Any other provider or entity (other than the MA organization) determined to have an appealable interest in the proceeding.


**42 C.F.R. § 422.582(a); (b); (d)**

**Request for a standard reconsideration.**

(a) Method and place for filing a request. A party to an organization determination or, upon providing notice to the enrollee, a physician who is treating an enrollee and acting on the enrollee's behalf, must ask for a reconsideration of the determination by making a written request to the MA organization that made the organization determination. The MA organization may adopt a policy for accepting oral requests.

(b) Timeframe for filing a request. Except as provided in paragraph (c) of this section, a request for reconsideration must be filed within 60 calendar days from the date of the notice of the organization determination.

. . . .

(d) Parties to the reconsideration. The parties to the reconsideration are the parties to the organization determination, as described in § 422.574, and any other provider or entity (other than the MA organization) whose rights with respect to the organization determination may be affected by the reconsideration, as determined by the entity that conducts the reconsideration.

15