# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

Case No. 21-12428-GG; 21-12439-GG (Consolidated)

## MSPA CLAIMS 1, LLC,
*Plaintiff/Appellant*,

v.

## COVINGTON SPECIALTY INSURANCE COMPANY,
*Defendant/Appellee*

## MSP RECOVERY CLAIMS, SERIES LLC,
*Plaintiff/Appellant*,

v.

## UNITED AUTOMOBILE INSURANCE COMPANY,
*Defendant/Appellee*

## CONSOLIDATED REPLY BRIEF OF APPELLANTS

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MSP RECOVERY LAW FIRM
Frank C. Quesada
Michael O. Mena
Charles E. Whorton
Gino Moreno
Arlenys Perdomo
Francesco A. Zincone
2701 S. LeJeune Road, 10th Floor
Coral Gables, FL 33134
(305) 614-2222

PODHURST ORSECK, P.A.
Stephen F. Rosenthal
Ramon A. Rasco
Christina H. Martinez
SunTrust International Center
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
(305) 358-2800

*MSPA Claims 1, LLC v. Covington Spec. Ins. Co.*
Case No. 21-12428-GG
*MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*
Case No. 21-12439-GG

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellants MSPA Claims 1, LLC and MSP Recovery Claims, Series LLC submit this list, which includes all trial judges, attorneys, persons, associations of persons, firms, partnerships or corporations that have an interest in the outcome of these consolidated appeals:

1. Akerman LLP (counsel for Appellee)

2. Armas Bertran Pieri (counsel for Appellant)

3. Altonaga, the Honorable Cecilia M. (U.S. Chief Judge, Southern District of Florida)

4. AvMed, Inc. (Assignor to Series 17-03-615, designated series of Appellant)

5. Copperthwaite, Nancy A. (counsel for Appellee)

6. Cortinas, Angel A. (trial counsel for Akerman LLP)

7. Covington Specialty Insurance Company (Defendant/Appellee)

8. Florida Healthcare Plus, Inc. (La Ley Recovery System, Inc.'s assignor)

9. Gerstin, Ari (trial counsel for Appellee)

10. Greenberg, Valerie B. (counsel for Appellee)

11. Guldalian, Bradley T. (trial counsel for Appellee)

12. Gunster (counsel for Akerman LLP)

C 1 of 4

*MSPA Claims 1, LLC v. Covington Spec. Ins. Co.*
Case No. 21-12428-GG
*MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*
Case No. 21-12439-GG

13. Hudson, Shayna K. (counsel for Appellant)

14. Kellgren, Ashley R. (counsel for Appellee)

15. Kiernan, Michael K. (counsel for Appellee)

16. Kluger Kaplan Silverman Katzen & Levine, PL (counsel for appellant)

17. La Ley Recovery Systems, Inc. (Appellant MSPA Claims 1, LLC's assignor)

18. Lauck, Lisa (co-counsel for Appellants)

19. Mancuso, Micayla (trial counsel for Appellant)

20. Martinez, Christina H. (co-counsel for Appellants)

21. Mena, Michael O. (counsel for Appellants)

22. Moreno, Gino (counsel for Appellants)

23. MSP Recovery Law Firm (counsel for Plaintiffs/Appellants)

24. MSP Recovery Services, LLC (sole member of Appellant)

25. MSPA Claims 1, LLC (Plaintiff/Appellant)

26. O'Sullivan, the Honorable John J. (U.S. Chief Magistrate Judge, Southern District of Florida)

27. Perdomo, Arlenys (counsel for Appellants)

28. Podhurst Oreseck, P.A. (co-counsel for Appellants)

29. Quesada, Frank C. (counsel for Appellants)

C 2 of 4

*MSPA Claims 1, LLC v. Covington Spec. Ins. Co.*
Case No. 21-12428-GG
*MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*
Case No. 21-12439-GG

30.    Rasco, Ramon A. (co-counsel for Appellants)

31.    Rosenthal, Stephen  F. (co-counsel for Appellants)

32.    Ruiz, John H. (trial counsel for Appellants)

33.    Samis, Scot E. (counsel for Appellee)

34.    Series 17-03-615 (designated series of Appellant)

35.    Silverman, Steve I. (counsel for Appellants)

36.    Torres, Edwin G. (U.S. Magistrate Judge, Southern District of Florida)

37.    Traub Lieberman (counsel for Appellee)

38.    United Automobile Insurance Company (Defendant/Appellee)

39.    VRM MSP Recovery Partners, LLC (sole member of Appellant)

40.    West, Bryan T. (counsel for Appellee)

41.    Williams, the Honorable Kathleen M. (U.S. District Judge, Southern District of Florida)

42.    Zincone, Francesco A. (counsel for Appellants)

C 3 of 4

*MSPA Claims 1, LLC v. Covington Spec. Ins. Co.*
Case No. 21-12428-GG
*MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*
Case No. 21-12439-GG

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, Appellants MSPA Claims 1, LLC and MSP Recovery Claims, Series, LLC, certify that no publicly traded company or corporation owns 10% or more of their stock.

<u>s/     *Stephen F. Rosenthal*</u>
Stephen F. Rosenthal

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

# TABLE OF CONTENTS

**PAGE**

TABLE OF CITATIONS ......................................................................... iii

## CASE NO. 21-12428

I.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY
      JUDGMENT TO COVINGTON ................................................................1

      A.    The One-Year Contractual Claims-Filing Provision That
            Covington Asserts As a Defense to Its Responsibility As a
            Primary Payer Is Preempted by Federal Law........................................1

            1.    The preemption issue was preserved for appeal. ........................2

            2.    Federal law preempts the short claims-reporting
                  period in Covington's policy ......................................................5

      B.    Covington Had Sufficient Notice of MSPA Claims'
            Reliance on Its Contractual Responsibility Under a Different
            Provision of Its Insurance Policy for That Theory to Have
            Been Considered at Summary Judgment ............................................13

      C.    The District Court's Breach of Contract Ruling Must Also
            Be Reversed.........................................................................................18

II.   THE DISTRICT COURT ERRED IN DENYING PARTIAL
      SUMMARY JUDGMENT TO MSPA CLAIMS BY CONCLUDING
      COVINGTON HAD NOT WAIVED ITS RIGHT TO CHALLENGE
      THE AMOUNT OF REIMBURSEMENT ..................................................19

i

<u>**CASE NO. 21-12439**</u>

I.      THE DISTRICT COURT ERRED IN GRANTING SUMMARY
        JUDGMENT TO UNITED AUTO BECAUSE FEDERAL LAW
        PREEMPTS FLORIDA'S INAPPLICABLE PRE-SUIT NOTICE
        REQUIREMENT ..........................................................................................25

        A.      The Eleventh Circuit Has Already Rejected the Applicability
                of § 627.736(10), Florida Statutes to the MSP Act's Private
                Right of Action .................................................................................26

        B.      Florida's Mandatory Pre-Suit Notice Requirements Would
                Frustrate Congress' Purpose of Requiring Prompt
                Reimbursement by Primary Plans .....................................................29

CONCLUSION ....................................................................................................35

CERTIFICATE OF COMPLIANCE ..................................................................36

CERTIFICATE OF SERVICE .............................................................................36

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

# TABLE OF CITATIONS

**PAGE**

## CASES

*Altria Grp., Inc. v. Good*,

555 U.S. 70 (2008)...........................................................................26

*Arizona v. United States*,

567 U.S. 387 (2012)........................................................................29

*Blue Martini Kendall, LLC v. Miami Dade Cty., Fla.*,

816 F.3d 1343 (11th Cir. 2016) ......................................................5

*Cal. Ins. Guar. Ass'n v. Azar*,

940 F.3d 1061 (9th Cir. 2019) .......................................................26

*Crosby v. Nat'l Foreign Trace Council*,

530 U.S. 363 (2000)........................................................................29

*Evans v. Georgia Regional Hospital*,

850 F.3d 1248 (11th Cir. 2017) ................................................20, 28

*Frasca v. NCL (Bahamas), Ltd.*,

654 F. App'x 949 (11th Cir. 2016)..................................................13

*Health Ins. Ass'n of Am., Inc. v. Shalala*,

23 F.3d 412 (D.C. Cir. 1994)...........................................3, 7, 8, 12

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com

\*  *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*,

832 F.3d 1229 (11th Cir. 2016) ..........................................................24, 30, 32

*Humana Med. Plan, Inc. v. Reale*,

180 So. 3d 195 (Fla. Dist. Ct. App. 2015)...............................................19, 22

*Marrache v. Bacardi U.S.A., Inc.*,

17 F.4th 1084 (11th Cir. 2021) ......................................................................29

*MidAmerica C2L Inc. v. Siemens Energy Inc.*,

25 F.4th 1312 (11th Cir. 2022) ......................................................................28

\*  *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*,

950 F.3d 764 (11th Cir. 2020) ...................................................3, 4, 26, 30, 31

\*  *MSPA Claims 1, LLC v. Tenet Fla., Inc.*,

918 F.3d 1312 (11th Cir. 2019) ...................................................10, 11, 30, 34

\*  *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*,

974 F.3d 1305 (11th Cir. 2020) ...........................................26, 27, 28, 29, 30

*MSP Recovery Claims, Series LLC v. Phoenix Ins. Co.*,

426 F. Supp. 3d 458 (N.D. Ohio 2019) .........................................................12

*Murphy v. Dulay*,

768 F.3d 1360 (11th Cir. 2014) .....................................................................34

*Ocean Harbor Cas. Ins. v. MSPA Claims 1*

261 So. 3d 637 (Fla. Dist. Ct. App. 2018).........................................3, 4, 7, 8

iv

**Podhurst Orseck, P.A.**

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

*Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*,

    875 F.3d 584 (11th Cir. 2017) .........................................................................21

*United States v. Baxter Int'l, Inc.*,

    345 F.3d 866 (11th Cir. 2003) ...............................................................22, 32

## STATUTES

42 U.S.C. § 1395w-22(a)(4) .....................................................................................10

42 U.S.C. § 1395y(b)(2)(B)(i) .................................................................................17

42 U.S.C. § 1395y(b)(2)(B)(ii) .......................................................................7, 32, 34

42 U.S.C. § 1395y(b)(2)(B)(vi) ........................................................2, 6, 8, 12, 31

42 U.S.C. § 1395y(b)(8) ...........................................................................................24

42 U.S.C. § 1395y(b)(3)(A).................................................................................30, 31

42 U.S.C. § 405(h) ...................................................................................................21

§ 627.736(10), Florida Statutes................................................ 25, 26, 27, 28, 29, 33

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

# REGULATIONS

42 C.F.R. § 411.22 ................................................................17

42 C.F.R. § 411.22(a)............................................................32

42 C.F.R. § 411.24(b) ...........................................................32

42 C.F.R. § 411.24(f) ...........................................4, 5, 7, 8, 12

42 C.F.R. § 411.24(f)(1) ...................................2, 3, 4, 6, 8, 12

42 C.F.R. § 411.24(l)(1)...........................................................9

42 C.F.R. § 422.108(f) .......................................................3, 4

42 C.F.R. § 422.574(d) .........................................................22

# LEGISLATIVE MATERIALS

H.R. Conf. Rep. No. 105-217 (1997)...................................6, 12

Balanced Budget Act of 1997, H.R. Conf. Rep. No. 105-217, at 831 (1997)...........6

# ADMINISTRATIVE MATERIALS

MEDICARE SECONDARY PAYER MANUAL,

    Ch. 7, § 40.14 (Rev. 10629, Eff. 04-19-21)...................................22

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

<u>**CASE NO. 21-12428**</u>

## I. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO COVINGTON

### A. The One-Year Contractual Claims-Filing Provision That Covington Asserts As a Defense to Its Responsibility As a Primary Payer Is Preempted by Federal Law

The district court was mistaken that MSPA Claims had not demonstrated Covington's responsibility to pay as a "primary plan" under the MSP Act. Covington defends the district court's decision on the ground that the med-pay coverage of its insurance policy was not "triggered" by a timely claim submitted within the one-year period specified in the policy. Covington's Brief ("CB") at 16. But federal law preempts that contractual time limitation vis-à-vis the government or an MAO, depriving a plan like Covington from avoiding its responsibility by way of a short claims-filing window in its policy. An integrated federal scheme, housed in both statute and regulation, preempts time limitations shorter than three years to ensure that Medicare and MAOs can recoup their conditional secondary payments to Medicare beneficiaries. Covington contends that this preemption argument was not preserved, so we dispatch that threshold line of defense first before proceeding to the merits.

1

## 1.  The preemption issue was preserved for appeal.

MSPA Claims' argument on appeal is that "*[s]everal provisions* of federal law conflict with, and therefore supersede, Covington's contract provision, the most pertinent being the federal claims-filing provision in section 1395y(b)(2)(B)(vi)."  Appellants' Initial Brief ("IB") at 16-17 (emphasis added). Covington seeks to dodge the merits of this argument by parsing the preemption argument MSPA Claims made below.  While it's true that MSPA Claims' argument in the district court emphasized preemptive regulations over the statutory provision, the argument presented them both as interconnected components of an express federal preemptive regime.  The legal force of the argument below and on appeal remains the same; they just emphasize different focal points on an integrated preemptive scheme.  Covington's slicing and dicing of the authorities cited below does not detract from the basic argument that was squarely presented: the contractual claims-filing provision is preempted.

MSPA Claims relied on a constellation of interconnected statutes and regulations, including 42 U.S.C. § 1395y(b)(2)(B)(vi) ("subsection (vi)"), to press its preemption argument in the district court.  In opposition to Covington's motion for summary judgment based on its one-year contractual claims-filing provision, MPSA Claims cited a number of authorities beneath a heading entitled "The MSP Act Preempts State Contract Law," including 42 C.F.R. §§ 411.24(f)(1) and §

2

422.108(f). DE 146 at 9.[1] It referenced the statute, subsection (vi), in the course of

discussing *MSPA Claims 1, LLC v. Kingsway Amigo Insurance Co.*, 950 F.3d 764

(11th Cir. 2020). The argument emphasized that the "applicable" aspect of

*Kingsway* is the Court's observation that subsection (vi) "allows Medicare to

***overcome any time limits*** prescribed by an employer's group health plan that

might otherwise prevent it from requesting reimbursement.'" DE 146 at 9 n.13

(quoting *Kingsway*, 950 F.3d at 772).[2] This is the same point MSPA Claims

presses on appeal, just in greater detail.

　　Covington's reply in support of its motion accordingly recognized that both

regulatory and statutory authorities were in play. It argued that § 422.108(f) does

not speak to contract provisions, § 411.24(f)(1) had been held invalid by the D.C.

Circuit in *Health Insurance Association of America, Inc. v. Shalala*, 23 F.3d 412

(D.C. Cir. 1994), and that subsection (vi) was "irrelevant." DE 156 at 3-4. The

magistrate judge, in addressing preemption, focused almost exclusively on §

422.108(f). DE 170 at 28-33. In so doing, it embraced *Ocean Harbor Casualty

Insurance v. MSPA Claims, 1*, 261 So. 3d 637 (Fla. Dist. Ct. App. 2018), which

---

[1] Citations refer to ECF-generated page numbers.

[2] Covington ignores that argument and takes out of context another portion of
*Kingsway* that MSPA Claims quoted in order to portray the argument as "the
opposite position" of the one advanced on appeal. *See* CB at 13 (citing DE 146 at
9 n.13).

3

**Podhurst Orseck, P.A**.

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

among other things found § 411.24(f)(1) invalid because of the D.C. Circuit's

ruling.  DE 170 at 29-31 (discussing *Ocean Harbor*); *see Ocean Harbor*, 261 So.

3d at 646 (discussing § 411.24(f)).  The report also deemed subsection (vi)

"irrelevant."  DE 170 at 43 n.16.

MSPA Claims duly raised the preemption arguments again in its objections

to the magistrate judge's report.  It argued that the contract's one-year deadline

> is preempted, as the regulations are clear that MAOs may recover
> [their] payment[s] "without regard to any claims filing requirements
> that the insurance program or plan imposes on the beneficiary or other
> claimant such as a time limit for filing a claim."

DE 172 at 3 (quoting § 411.24(f)(1) and citing § 422.108(f)).  MSPA Claims also

explained that *Kingsway* shed new light on "the preemptive nature of the MSP

Act," which calls *Ocean Harbor* into doubt.  DE 172 at 13.  In its reply

memorandum, MSPA Claims made the connection between these points even more

explicit.  It explained that Congress had "responded" to the D.C. Circuit's ruling

invalidating § 411.24(f) by "add[ing] the 'Claims-filing period' provision

[subsection (vi)] to reinforce the validity of 42 C.F.R. § 411.24(f)(1)."  DE 176 at

7.  That legislative development further undercut the analysis in *Ocean Harbor*, *id*.

at 7 n.5, and demonstrated that "Congress clearly enacted [subsection (vi)] to

facilitate a secondary payer's ability to recover conditional payments by allowing

an MAO to bypass claims-filing requirements," *id*. at 7 n.6.

4

These arguments form the crux of the preemption argument in this appeal. The presentation on appeal is different only in that it *begins* with subsection (vi), which is unquestionably the legislative font for the reincarnation of the regulatory preemption provision, § 411.24(f).  Covington's effort to characterize the arguments MSPA Claims made below as "entirely different" from the ones on appeal relies on an unfair atomization of those arguments.  The preemption arguments are squarely presented in this appeal.[3]

## 2. Federal law preempts the short claims-reporting period in Covington's policy

Both Congress and the Secretary of Health and Human Services have made clear that the federal government and MAOs' rights to recoup conditional

---

[3] If there were any doubt about preservation for purposes of appeal, the Court would still have the discretion to address the merits of this pure question of law regarding the preemptive effect of this statutory provision and its affiliated regulations.  *See* IB at 17 n.8 (citing *Blue Martini Kendall, LLC v. Miami Dade Cty. Fla.*, 816 F.3d 1343, 1349 (11th Cir. 2016)).  The resolution of the purely legal question of whether the MSP Act's claims-filing requirement preempts shorter claims-filing requirements in employer health plans, no fault insurance policies, and liability insurance policies is inarguably an issue of general impact that will bear upon a significant number of secondary-payment reimbursement claims.  "[F]ailure to consider this pure question of law would result in a miscarriage of justice," not simply because "[a]ny wrong result resting on the erroneous application of legal principles is a miscarriage of justice in some degree," *Blue Martini*, 816 F.3d at 1349 (quotation marks omitted), but because not giving force to the preemptive force of subsection (vi) and affiliated regulations will hamstring a federal scheme designed to protect the public fisc.  *See id.* at 1350 (noting that "our Court has not been particularly strict" on this requirement when the issue is one of "general impact").

5

**Podhurst Orseck, P.A.**

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346                      www.podhurst.com

payments they make for Medicare beneficiaries may not be hampered by short claims-reporting periods adopted by primary plans. The Secretary has long maintained that a primary plan's own claims-reporting deadlines cannot impair Medicare's right to recover conditional payments. 42 U.S.C. § 411.24(f)(1). After the D.C. Circuit found that regulation to lack statutory authority, Congress stepped in to provide it in 42 U.S.C. § 1395y(b)(2)(B)(vi). *See* IB at 24-25. The legislative history accompanying subsection (vi) makes clear that Congress sought to afford a minimum of three years to recoup conditional payments.[4] The combination of the preemptive force of subsection (vi) and § 411.24(f)(1) clearly preclude an insurer like Covington from asserting non-compliance with its policy's one-year claims-reporting provision to avoid claims by a secondary payer for reimbursement of conditional payments.

---

[4] The MSP Act's claims-filing provision, subsection (vi), reflects Congress' intent to overcome the obstacle "in many cases where [Medicare secondary payment] recoveries are sought" that arises where initial "claims have never been filed with the primary payer," but the time it takes to identify "potential recoveries" exceeds the period of time that an insurance plan allows its insured to file a claim. *See* Balanced Budget Act of 1997, H.R. Conf. Rep. No. 105-217, at 831 (1997); *see also* IB at 25 & n.10. By enacting subsection (vi) Congress sought to ensure that where a request for payment is made to "the entity required or responsible to pay within 3 years from the date the item or service was furnished ... any other claims filing time limits" cannot stand in the way of recovering conditional Medicare payments. H.R. Conf. Rep. No. 105-217, at 831.

6

None of Covington's arguments persuades otherwise.  Its broadest objection concerns what Covington tries to cast as a chicken-and-egg conundrum: how federal law could displace a contractual provision that is necessary to establish demonstrated responsibility "in the first instance." CB at 23.  This is a false construct, for it mistakenly assumes that Congress lacks the power to preempt private contract provisions and thereby expand the time period in which that "first instance" is assessed.

Congress unquestionably sought to displace such restrictive time periods when it enacted subsection (vi).  It recognized that the problem in recovering conditional payments in "many cases" was because "claims have never been filed with the primary payer," such that the government would be in the position of making a claim for repayment based on a contractual obligation "in excess of the period many health plans allow for claims filing."  H.R. Conf. Rep. No. 105-217, at 831.  Thus, subsection (vi) removed the obstacle of an insurer's ability to refuse to reimburse Medicare's conditional payments by arguing that it is not "demonstrated that such primary plan has or had a responsibility to make payment," 42 U.S.C. § 1395y(b)(2)(B)(ii), because the time to report a claim under its policy, and thereby establish its contractual obligation, had run.

Covington's continued reliance on *Shalala* and *Ocean Harbor*, CB at 25-26, overlooks the effect that the enactment of subsection (vi) had on § 411.24(f), the

7

regulation the *Shalala* court had deemed "an invalid extension of the MSP statute," 23 F.3d at 419, and the *Ocean Harbor* court followed, 261 So. 3d at 646.   In *Shalala*, the court made clear its understanding that under the terms of § 411.24(f), if the government "pays for a service that would also be covered under an employer group health plan if the plan's procedures (such as filing deadlines) were observed, [the government] can demand reimbursement from the plan *even if those procedures were not followed*."  23 F.3d at 646 (court's emphasis).  When Congress added subsection (vi) in direct response to that decision, it supplied the statutory authority for this regulation that the D.C. Circuit had held was previously lacking.  Section 411.24(f)(1) unambiguously permits recovery of conditional payments "without regard to any claims filing requirements that the insurance program or plan imposes on the beneficiary or other claimant such as a time limit for filing a claim."  *See* IB at 24-25.  Following the enactment of subsection (vi), a secondary payer's claim for reimbursement of a conditional payment that is made upon an insurance policy within three years of the beneficiary's receipt of services, 42 U.S.C. § 1395y(b)(2)(B)(vi), suffices to establish the insurer's reimbursement obligation, irrespective of the policy's shorter deadline.

Preempting this sole aspect of a private contract (the claims-reporting deadline) does not "directly contradict[ ] the demonstrated responsibility requirement," as Covington contends.  CB at 27.  That requirement still remains on

8

all grounds (i.e., all policy terms) that establish a primary plan's contractual

obligation to make the payment, just not on its less-than-three-year temporal limit

on claims-reporting.  Nor does the preemptive regime render "any contractual

provisions requiring reporting of a claim within fewer than three years … invalid."

*Id.*  Such contractual provisions still remain valid vis-à-vis *other* parties, such as

beneficiaries and providers, who routinely seek reimbursement under insurance

policies.  Hence the neighboring regulation Covington cites, § 411.24(l), which

recognizes that a beneficiary, provider, or supplier must still "file[] a proper claim

with a primary payer."[5]  This regulation gives the government the option of

seeking reimbursement from those parties who fail to make a proper claim under

an insurance policy's terms in the event the government "is unable to recover from

the primary payer," § 411.24(l)(1), pursuant to the distinct timeframes governing

its recovery rights.  Thus, it is wrong to say that the federal preemptive regime

"eliminate[s] a policy condition" altogether.  CB at 26.  It only renders a short

---

[5] It provides:

> If Medicare makes a conditional payment with respect to services for
> which the beneficiary or provider or supplier has not filed a proper
> claim with a primary payer, and Medicare is unable to recover from
> the primary payer, Medicare may recover from the beneficiary or
> provider or supplier that was responsible for the failure to file a proper
> claim.

42 C.F.R. § 411.24(l)(1).

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    |    www.podhurst.com

claims-reporting provision ineffective with respect to recoupment claims by secondary payers (the government and an MAO).

Covington's second argument, that subsection (vi) "does not apply to MAOs and instead applies only to 'the United States,'" CB at 21, fails to directly address, let alone refute, MSPA Claims' statutory analysis for viewing the provision's reference to the "United States" as inclusive of MAOs. *See* IB at 21-24. Because MAOs "stand in the shoes of Medicare" with regard to the "primary/secondary payment structure," IB at 19 (quoting *MSPA Claims 1, LLC v. Tenet, Fla., Inc.*, 918 F.3d 1312, 1317 (11th Cir. 2019)), including the right to recoup conditional payments pursuant to the "right-to-charge" provision of 42 U.S.C. § 1395w-22(a)(4), IB at 20, there is no good reason to conclude that Congress did not intend MAOs also to benefit from the three-year period. *See generally* IB at 19-22.

Covington's only response is to point out that in *Tenet* this Court held that *when suing*, MAOs cannot use the government right of action which refers to the "United States" but instead must rely on the private right of action. CB at 21. But the initial brief anticipated this argument. It noted that the absence of a parallel claims-filing provision for MAOs did not support an inference that Congress intended to limit subsection (vi) to only the government, IB at 22-23, where the overall statutory scheme demonstrates Congress' intent to put MAOs on an equal footing with the government for recovering conditional payments from primary

**Podhurst Orseck, P.A**.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

payers, *id.* at 24-25.  Covington offers no rejoinder to this material statutory distinction.

Finally, Covington's third argument, that subsection (vi) only applies to "employer group health plans," CB at 22, relies on a selective view of the statute. It completely ignores Congress' use of a different, broader, defined term in the independent clause of subsection (vi).  *See* IB at 26-28.  Covington's willful blindness to the second half of the provision, in spite of MSPA Claims' explanation that Congress' deliberate use of the broader category of "a primary plan" in the permissive independent clause conveys an intent to extend the preemptive scope of the three-year claims-filing period to *all* such plans, IB at 27, all but concedes the interpretative point.  And the legislative history Covington points to only underscores the textual difference that supports a broad preemptive reading.[6]

---

[6] MSPA Claims' reading of the text of subsection (vi) is consistent with the distinct way the Conference Report described the independent clause broadly, as "the entity required or responsible to pay," and the dependent "notwithstanding" clause more specifically, as "an employer group health plan":

> Specifies that the U.S. could seek to recover payments if the request for payments was submitted to *the entity required or responsible to pay* within 3 years from the date the item or service was furnished. This provision would apply notwithstanding any other claims filing time limits that may apply *under an employer group health plan*.

**Podhurst Orseck, P.A**.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

The case Covington relies on, which viewed subsection (vi) as limited to "claims against employer group health plans," *MSP Recovery Claims, Series LLC v. Phoenix Ins. Co.*, 426 F. Supp. 3d 458, 488 (N.D. Ohio 2019), suffers from the same myopic reading of subsection (vi). The court in *Phoenix* did not consider both clauses of subsection (vi), effectively ignoring the language by which Congress mandated a three-year period in which a secondary payer may submit a claim not just to employer group health plans, but "*to the entity* required or responsible under this subsection to pay with respect to the item or service … under *a primary plan*." 42 U.S.C. § 1395y(b)(2)(B)(vi) (emphasis added).

In summary, and for the reasons explained in greater detail in the initial brief (at 16-29), both subsection (vi) and § 411.24(f)(1) preempt the one-year claims-reporting provision in Covington's insurance policy with respect to an MAO's claim for reimbursement of its conditional payment to P.M.

---

H.R. Conf. Rep. No. 105-217, at 831 (emphasis added). Given that the amendment was responding to "[a] 1994 appeals court decision," *id*., the fact that the *Shalala* court's analysis of § 411.24(f) considered it in terms of "an employer group health … plan's procedures," 23 F.3d at 419, may well explain why Congress tailored the notwithstanding clause to that category of plans. That takes nothing away from the broad language Congress used in the independent clause.

12

**B.    Covington Had Sufficient Notice of MSPA Claims' Reliance on Its Contractual Responsibility Under a Different Provision of Its Insurance Policy for That Theory to Have Been Considered at Summary Judgment**

Covington does not dispute that a complaint need not detail the precise theory the plaintiff advances so long as it affords a defendant fair notice of the claim and the grounds for it.  *Compare* IB at 30 *with* CB at 34.  The disagreement lies over whether the complaint's allegations that Covington is a primary payer based upon Covington's obligations to pay P.M.'s medical expenses under its insurance policy gave Covington fair notice that MSPA Claims might rely on the *portion* of the policy relating to bodily injury coverage as opposed to medical payments coverage.

Covington would have the Court answer that question in a vacuum, ignoring that Covington knew full well, long before the response to its summary judgment motion, that MSPA Claims had become aware of Covington's 2016 settlement with P.M. (under its bodily injury coverage) and that both parties were taking discovery related to that settlement.  Because the key question is whether the complaint gave the defendant fair notice of a legal theory that is fairly encompassed by its broader claims, it would unduly constrict that standard to ignore events that afforded a defendant advance notice of that theory.  *See Frasca v. NCL (Bahamas), Ltd.*, 654 F. App'x 949, 954 (11th Cir. 2016) (reversing

**Podhurst Orseck, P.A**.

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

summary judgment which had refused to consider a theory argued by the plaintiff where the defendant was aware of the plaintiff's theory months before defendant moved for summary judgment).

Covington claims to have been "ambushed" at summary judgment, embellishing that claim by decrying the "prejudice" that would flow from the "procedural morass" resulting from the need to re-open discovery to pursue factual avenues related to the settlement. CB at 34-35. These protestations are vastly exaggerated. And they have been rolled out for the first time on appeal. Covington sang a different tune before the district court in response to MSPA Claims' argument based on the settlement agreement. While it argued that MSPA Claims' reliance on the payment under the bodily injury portion of the insurance policy to demonstrate Covington's primary payer status differed from the complaint's focus on the payment under the policy's no-fault, medical expenses provision, *Covington never claimed "ambush" or surprise in the district court*. *See* DE 152 at 2-4; DE 156 at 1-2.

That is because it could not fairly do so: MSPA Claims' argument based on the settlement agreement came as no surprise. Covington knew, years before the complaint in this case was even filed, that it was a primary payer under federal law because it paid P.M.'s medical bills in a settlement back in 2016. *See* DE 154, at

**Podhurst Orseck, P.A**.

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346                www.podhurst.com

4, ¶ 12.  Once Covington disclosed the P.M. settlement agreement during discovery, both parties were indisputably aware of it.

Covington actually engaged in investigation and discovery related to the settlement theory during the discovery period in this case, plainly in anticipation of MSPA Claims relying upon it.  For instance, in August 2020—six months before Covington moved for summary judgment—MSPA Claims deposed Covington's corporate representative extensively about the settlement of P.M.'s claim and the effect that payment had on Covington's primary-payer status under the MSP Act. DE 135-5 at T.2, T.126:25–133:10; T.136:8–147:25.  In January 2021, still two months before Covington moved for summary judgment, MSPA Claims deposed its expert, who essentially conceded that Covington's settlement make it a primary payer for purposes of the complaint:

> Q.   When there's a settlement, the defendant in this case, Covington, becomes a primary payer, correct?
>
> A.   Once there is a settlement, I believe they would be the primary payer ....
>
> Q.   ....  Do you agree that when a company like Covington settles a case with a Medicare Part C beneficiary, Covington becomes a primary payer; yes or no?
>
> A.   Yes.
>
>      ....

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

Q.    ... [W]e agree ... that Covington is a primary payer ***as it relates to the claims that we brought forth***, correct?

A.    Correct.

DE 135-12 at T.1, T.52:6-20, T.54:8-11 (emphasis added).  In addition, Covington

was able to obtain a declaration from P.M.'s attorney, a Mr. Bandklayder, DE 154-

2, and marshaled that evidence in opposition to MSPA Claims' motion for partial

summary judgment predicated on the settlement agreement.  *See* DE 154 at 9-10,

¶¶ 41-42; DE 152 at 11-12 (arguing the evidence that Covington did not fail to

comply with its reimbursement obligations for the amounts paid to P.M. in the

settlement).[7]  Covington itself deposed an MSPA Claims witness in October 2020

about correspondence with Mr. Bandklayder concerning the settlement.  *See* DE

135-2 (Deposition of Natasha Blanco) at T.1, T.85:22–91:3.

Given this record, Covington's after-the-fact claims of ambush and surprise

ring hollow.  And given the reality that the settlement theory was well known to

both sides during the discovery period, Covington did not complain to the district

court that allowing this theory would require reopening discovery and create some

---

[7] Indeed, Mr. Bandklayder's declaration is dated March 19, 2021, which is several days *before* MSPA Claims filed its opposition to Covington's motion for summary judgment asserting the settlement agreement as a basis for Covington's primary payer status.  *Compare* DE 154-2 *with* DE 146.

16

**Podhurst Orseck, P.A.**

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

procedural morass.  *See* DE 152 at 2-4; DE 156 at 1-2.  That overwrought

contention saw its first light in this appeal.

Distinctions between provisions within Covington's insurance policy, under

which it agreed to cover medical expenses incurred by a party injured on its

insured's premises, are of no consequence to the common question at issue:

whether Covington qualifies as a primary payer under 42 U.S.C. §

1395y(b)(2)(B)(i) and 42 C.F.R. § 411.22.  The potentially varying amounts of

coverage and other contractual conditions (which Covington does not even

articulate) are minor distinctions which have no bearing on that operative question.

*See* CB at 31, 33.  Covington puffs up the differences between the med-pay and

liability coverages in its insurance policy in an effort to make the issue look larger

and more significant than it is.  Either way, Covington was well aware that it was

being sued under the MSP Act as a primary payer based on its insurance policy for

P.M.  And because Covington knew all along that it had paid out moneys for

P.M.'s medical expenses in a settlement pursuant to the bodily injury section of its

insurance policy, it can hardly claim surprise at its exposure to being found to be a

primary payer pursuant to that provision of the contract.

Covington's reference to other litigation by a related entity, MSPA Recovery

Claims, Series LLC, to demonstrate that MSPA Claims understands the difference

between alternative theories (CB at 32) misses the point.  The question is whether,

based on the complaint in this case, and in view of Covington's knowledge of both parties' increased focus on the settlement agreement's implication of the bodily injury coverage under the insurance policy, *Covington* could have fairly foreseen MSPA Claims relying on that additional factual basis for asserting Covington's primary payer status.  It plainly could have and actually did.

Under these circumstances, it was error for the district court to preclude MSPA Claims from advancing this particular theory at summary judgment.

## C.    The District Court's Breach of Contract Ruling Must Also Be Reversed

The district court's summary judgment on MSPA Claims' separate breach of contract claim crumbles under the weight of its own faulty conclusion that Covington is not a primary payer because no claim was asserted within the insurance policy's med-pay one-year reporting provision, and thus such coverage was never triggered.  DE 170 at 45.  Covington merely doubles-down on the district court's view that "med-pay coverage is not triggered unless the medical expenses are incurred and reported within one year."  CB at 36.  But in doing so, Covington seemingly admits its position is conditioned upon being correct that the policy's one-year claims-reporting provision is not preempted.  *Id*.  For the reasons discussed above (Part I.A.2., *supra*) and in the initial brief (at 15-29), however, that provision of Covington's policy is preempted vis-à-vis MSPA Claims' federal

18

cause of action to recoup conditional payments made to P.M.  As the evidence

shows, MSPA Claims notified Covington of P.M.'s receipt of accident-related

medical treatment within three years of occurrence, sufficient to trigger coverage

and Covington's obligation to pay.  *See* IB at 28, 34 (listing record cites).

Covington's refusal to provide reimbursement breached its contractual obligation.

## II.    THE DISTRICT COURT ERRED IN DENYING PARTIAL SUMMARY JUDGMENT TO MSPA CLAIMS BY CONCLUDING COVINGTON HAD NOT WAIVED ITS RIGHT TO CHALLENGE THE AMOUNT OF REIMBURSEMENT

Covington is estopped from challenging the amount of reimbursement which

it failed to dispute through the MSP Act's administrative appeal procedure.  *See*

*Humana Med. Plan, Inc. v. Reale*, 180 So. 3d 195, 201 (Fla. Dist. Ct. App. 2015).

MSPA Claims preserved its ability to challenge the district court's ruling

regarding Covington's obligation to exhaust administrative remedies by properly

objecting to the portion of the magistrate judge's report that addressed "whether

Covington failed to exhaust administrative remedies."  DE 170 at 34-38.  Indeed,

contrary to Covington's assertions, *see* CB at 37-38, MSPA Claims' objections to

the report contained a dedicated section tracking the report's language and clearly

labeled "Defendant failed to exhaust administrative remedies."  DE 172 at 12-14.

The discussion within that section quoted and identified the objected-to portion of

the report.  *See* DE 172 at 12 (quoting DE 170 at 35).  Covington would

nevertheless have the Court disregard MSPA Claims' objection, seemingly because MSPA Claims failed to use the precise term "affirmative defenses." MSPA Claims, however, was plainly discussing Covington's affirmative defense regarding the amount of reimbursement in the context of Count I.

Eleventh Circuit law does not require such formalistic rigidity to preserve an objection for appellate review, and the cases Covington cites in support of its misguided argument do not suggest otherwise. In *Harrison v. Fulton Cty.*, 735 F. App'x 579, 588 (11th Cir. 2018), the appellant failed to object to portions of the report altogether; the Court did not analyze whether his objection was precise or specific enough and certainly did not conclude there was a waiver based on the semantic distinctions Covington presses here. In *Evans v. Georgia Regional Hospital*, 850 F.3d 1248, 1257 (11th Cir. 2017), the Court found the appellant had waived her challenge to the district court's dismissal of one of her claims because, while she objected to the dismissal of certain claims, she altogether did not object to *that* claim. The appellant's failure in *Evans* cannot be equated to MSPA Claims' perceived failure to use the words "affirmative defense." MSPA Claims' objection mirrored the language from the report—*which itself discussed administrative exhaustion within its analysis of Count I. See* DE 170 at 14, 34.

Turning to the merits, a plain reading of the applicable regulations as well as this Court's precedent compels finding that the Court lacks subject-matter

**Podhurst Orseck, P.A**.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

jurisdiction to review Covington's challenge to the reimbursement amount at this late stage.  *See* IB at 34-44.

For all of Covington's insistence that there was no evidence of an organization determination, *see* CB at 40, evidence of FHCP's payment—which can serve as an organization determination—appears throughout the record.  *See* IB at 37 (citing record).  And, Covington concedes that FHCP "paid for the medical treatment of its enrollees."  CB at 41.  Once FHCP determined the amount owed and made a payment, any party to its determination had to challenge that decision through the MSP Act's administrative procedure before seeking review in an Article III court.

The Act—through its statement that "[n]o findings of fact or decision of the [Secretary of Health and Human Services, and an MAO under Medicare Part C] shall be reviewed by any person, tribunal, or governmental agency except as herein provided," 42 U.S.C. § 405(h)—does not admit exceptions.  *See Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Central Ins. Co.*, 875 F.3d 584, 587 (11th Cir. 2017).  It makes the administrative review procedure the exclusive means to obtain subsequent judicial review as much for enrollees as for private health plans like Covington.  *See* IB at 39-44.  Because no party to the FHCP's organization determination appealed, the Court lacks subject-matter

**Podhurst Orseck, P.A**.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

jurisdiction to review Covington's affirmative defense as to the reimbursement amount.  *See Reale*, 180 So. 3d at 204-05.

Covington's objection that it is not a party to the organization determination hinges on its assertion that it lacked an "appealable interest" under 42 C.F.R. § 422.574(d).  It contends that it had no such interest because it did not receive information of FHCP's conditional payments until the day MSPA Claims filed suit.  CB at 45.

Covington acknowledges, however, that it was aware that P.M. had made a claim against its insured and that, "[a]t the time FHCP allegedly issued conditional payments [to P.M.], Covington was investigating" her claim against its insured.  CB at 45.  Indeed, because a potential primary payer has an affirmative obligation to engage when a Medicare beneficiary is involved, Covington admittedly "investigate[s] the claimant's Medicare status."  DE 154 at 4, ¶ 11.[8]  P.M. was injured in an accident at Covington's insured's premises on

---

[8] *See U.S. v. Baxter Int'l, Inc.*, 345 F.3d 866, 901 (11th Cir. 2003) (observing that "the MSP [Act] creates as a practical matter a need for insurers to determine, before paying a disputed liability claim (involving among its alleged damages medical expenses likely to have been paid by Medicare), whether the Government has made a conditional payment, upon peril of being forced to pay the same claim twice"); MEDICARE SECONDARY PAYER MANUAL, Ch. 7, § 40.14 (Rev. 10629, Eff. 04-19-21) ("When a liability insurer is obligated to make payment to an injured plaintiff who is age 65 or older, the insurer has reason to know of Medicare's probable interest and to act to ascertain Medicare's involvement"), *available* at

22

February 25, 2014.  DE 135 at 7, ¶ 25.  FHCP's records reveal that P.M. received medical treatments between February 25 to November 3, 2014.  *Id*. at 8, ¶ 26; DE 131-14.  The record does not make clear when FHCP paid those providers' bills, but Covington admits that "[a]s of November 2014" it had information about P.M. sufficient to determine if she was covered by Medicare.  DE 154 at 5, ¶ 15.

As a potential primary payer, Covington is not entitled to sit back and wait for information on conditional payments it receives from an MAO like FHCP.  Covington's own supposed practice is to "start with every claim seeking that information directly from the claimant or their attorney, if they are represented."  DE 135-5 at T.42:4-6; DE 154 at 4, ¶ 11.  Therefore, just because Covington claims not to have learned about FHCP's payments (from MSPA Claims) until much later, it does not rule out the possibility that Covington could have learned this information sooner and in time to contest FHCP's organization determination had it wished, even under a reservation of rights.

Covington's admission that it did not learn of FHCP's conditional payments until the day MSPA Claims filed suit merely exposes its lackadaisical approach to its affirmative responsibilities under the MSP Act, which include investigating to determine the Medicare status of a beneficiary and reporting or providing notice to

---

https://www.cms.gov/files/document/chapter-7-msp-recovery.pdf (last visited May 13, 2022).

**Podhurst Orseck, P.A**.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

CMS regarding its primary payment responsibility. *See* 42 U.S.C. § 1395y(b)(8); 42 C.F.R. § 411.25. Consistent with the MSP Act's goals to curb rising Medicare costs and make private insurers cover the treatment as primary payers, the Court should not allow Covington to shirk these obligations, and then—once it has waited for Medicare or an MAO to make conditional payments and seek reimbursement—also allow it to challenge a reimbursement amount outside of the Act's exclusive judicial review procedure. *See Humana Med. Plan, Inc. v. W. Heritage*, *Ins., Co.*, 832 F.3d 1229, 1234 (11th Cir. 2016).

\* \* \*

For the foregoing reasons, (1) Covington was not entitled to summary judgment because there remain disputed issues of material fact as to whether it is a primary plan responsible for P.M.'s medical bills, for purposes of both counts I (MSP Act) and II (breach of contract), and (2) MSPA Claims should have been granted partial summary judgment as to Covington's belated challenge to the amount of the reimbursement for P.M.'s claim.

24

<u>CASE NO. 21-12439</u>

I.    **THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO UNITED AUTO BECAUSE FEDERAL LAW PREEMPTS FLORIDA'S INAPPLICABLE PRE-SUIT NOTICE REQUIREMENT**

Florida's statutory requirement that a beneficiary of a no-fault motor vehicle liability policy provide pre-suit notice before filing a lawsuit seeking personal injury protection ("PIP") benefits under his or her no-fault insurance policy has no bearing on the rights of an MAO (or traditional Medicare) under the MSP Act to recover unreimbursed conditional Medicare payments through legal action.  *See* IB at 45 n.19.  United Auto seemingly attempts to place this litigation under the umbrella of Florida's PIP statute through its mischaracterization of MSP Recovery's legal claims as ones "seeking payment of PIP benefits." United Auto Brief ("UAB") 13; *see also id.* 1, 11, 17, 21, 24 (similar mischaracterizations). Such a view is fundamentally misguided.  MSP Recovery is ***not*** seeking to enforce any contractual rights of United Auto's insureds.  Rather MSP Recovery is seeking to recoup conditional Medicare payments that are subject to recovery from a primary plan, *i.e.*, United Auto, pursuant to the MSP Act's private right of action. The MSP Act alone, not § 627.736(10), Florida Statutes, or any other state procedural statutes for that matter, governs the requisites to bringing such claims.

As this Court has recognized, other than the substantive showing of a primary payer's "demonstrated responsibility," which can be satisfied by no more than constructive knowledge, Congress did not burden an MAO's ability to recover conditional payments from a primary payer with any pre-suit notice requirement, federal or otherwise. *See MSP Recovery Claims Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1319 (11th Cir. 2020); *Kingsway*, 950 F.3d at 766-67, 776. Thus, not only is Florida's PIP statute inapplicable to the federal reimbursement claims in this case, but even if it is arguable that those claims could fall within the purview of § 627.736(10), the state statute's pre-suit demand requirement would be preempted by the MSP Act.[9]

### A. The Eleventh Circuit Has Already Rejected the Applicability of § 627.736(10), Florida Statutes to the MSP Act's Private Right of Action

United Auto is wrong that this Court in *ACE* did not soundly reject the very ground on which the district court granted summary judgment to United Auto in

---

[9] United Auto overstates the significance of the principle which disfavors preemption "'in a field traditionally occupied by the States' – such as insurance." UAB at 21 (quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008)). Although the Ninth Circuit case United Auto cites (UAB at 22) discusses this preemption principle in the context of a dispute involving Medicare's secondary payer provisions, the court resolved that case on non-preemption grounds. *See Cal. Ins. Guar. Ass'n v. Azar*, 940 F.3d 1061, 1067 (9th Cir. 2019). The *Azar* court held that a state insolvency insurer of last resort was not a primary plan and thus not subject to the MSP Act based on the "plain meaning" of the MSP Act's definition of "a workers compensation law or plan." *Id.* at 1068.

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

this case:  that an MAO must comply with Florida's no-fault statutory notice

requirement as a pre-requisite to filing a private right of action under the MSP Act.

*See* UAB at 36-38.  To the contrary, as United Auto acknowledges, in addition to

the grounds on which the *ACE* Court reversed the dismissal of the plaintiffs'

claims in four consolidated cases, that Court also addressed and ruled on the

alternative bases on which the defendants sought affirmance.  *Id.* at 37 (citing

*ACE*, 974 F.3d at 1318-19).  Although the *ACE* Court did not enumerate §

627.736(10), Florida Statutes, as one of the "pre-suit notice requirements" that it

was addressing "[w]ith respect to [defendants'] second argument," 974 F.3d at

1319, two of the defendants raised that statute as the basis for their argument.  IB

at 46 n.20.  Liberty Mutual explicitly argued that MSPA was "required to comply

with the *pre-suit notice requirements*, under both section 627.736(10) and the

terms of the insurance policies."  Answer Br. of Liberty Mut. Fire Ins. Co. in *ACE*,

2019 WL 1147159, at *52 (emphasis added).  United Auto is wrong that the Court

only considered "federal regulations," UAB at 38, and "exercised its discretion not

to consider" the argument that MSP Recovery had to comply with the "pre-suit

notice requirements" of the Florida statute, *id.* at 40.  To the contrary, when the

Court rejected this argument, it stated that "Defendants point to no law that

obligated Plaintiffs to ... otherwise provide advance notice of their intent to bring a

claim."  *ACE*, 974 F.3d at 1319.  The *ACE* Court necessarily had to reject the

27

applicability of § 627.736(10), Florida Statutes to a private right of action since such "obligat[ory]" "advance notice" is precisely what the Florida statute otherwise requires.

United Auto's critique that the arguments regarding the Florida statute were unrelated to the *ACE* Court's primary holding does not render meaningless the Court's ruling on the inapplicability of the statute.  *See* UAB at 39-40.  The Court addressed the alternative grounds for affirmance that the defendants raised since the Court had concluded the district court's reason for dismissing the plaintiffs' claims was incorrect.  *See MidAmerica C2L Inc. v. Siemens Energy Inc.*, 25 F.4th 1312, 1331 (11th Cir. 2022) ("Although the district court's reason for granting summary judgment was incorrect, we can, of course, affirm on any basis supported by the record.").  If the Court had agreed with the alternative argument regarding the applicability of Florida's pre-suit notice requirement, that ruling would have required the dismissal of the plaintiffs' claims for failure to allege compliance therewith, even though the Court's primary holding concluded that downstream actors could avail themselves of the private cause of action.  *Cf. Evans*, 850 F.3d at 1255 (noting that where court "comment[ed] briefly on the other issues *raised on appeal*" the resulting statement "was not dicta, but rather directly addressed a question before the Court.").  For the reasons detailed below,

**Podhurst Orseck, P.A**.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

it is entirely reasonable that the *ACE* Court rejected the applicability of Florida's pre-suit notice requirement under a preemption rationale.  IB at 47.

### B. Florida's Mandatory Pre-Suit Notice Requirements Would Frustrate Congress' Purpose of Requiring Prompt Reimbursement by Primary Plans

United Auto's arguments that the MSP Act does not preempt § 627.736(10) because MSP Recovery "does not assert that it cannot comply with the requirements" of the Florida statute (UAB at 20-21, 31), or that it is a "simple requirement" (*id.* at 28) which "would pose only a minor inconvenience" (*id.* at 33), are beside the point.  An individual party's "physical impossibility" of compliance with a challenged state law is not the only test for conflict preemption. *See Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1094 (11th Cir. 2021) (identifying two independent bases for conflict preemption).  United Auto overlooks that "[t]he ordinary principles of preemption [also] include the well-settled proposition that a state law is preempted" where it stands "as an obstacle" to "the full purposes and objectives of Congress."  *Arizona v. United States*, 567 U.S. 387, 406 (2012) (defining one of the bases for conflict preemption).  "'What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects.'"  *Id.* at 400 (quoting *Crosby v. Nat'l Foreign Trace Council*, 530 U.S. 363, 373 (2000)).

29

The MSP Act's private cause of action "establishe[s] a private right of action for damages … in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3)(A).  The text creates a general right to sue, ***without procedural preconditions of any sort***.  The only conditions to stating a cause of action are substantive, such as the potential defendant's failure to pay upon its demonstrated responsibility to reimburse Medicare payments.  *See Kingsway*, 950 F.3d at 771.  That responsibility can be shown through nothing more than the defendant's constructive knowledge, which requires no sort of notice from an MAO to a primary payer.  *See* IB at 46, 49-50 (as recognized in *Ace*, *W. Heritage*, and *Kingsway*).

The plain text of this procedurally unfettered right to sue evidences a broad license that serves to advance Congress' objective of protecting the fiscal viability of Medicare by "curb[ing] the rising costs of Medicare" through the enactment of the secondary payment regime.  *See W. Heritage*, 832 F.3d at 1234.  As this Court has recognized, the private right of action was created to give "some teeth" to the reimbursement obligations of primary payers who have failed to meet those obligations voluntarily.  *Tenet Fla., Inc.*, 918 F.3d at 1316.

United Auto suggests that because Congress did not expressly "reject any state pre-suit notice requirement" in the federal private right of action, Congress'

**Podhurst Orseck, P.A**.

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

"silence" on this matter indicates it intended parties to comply with such state laws also.  UAB at 31-32.  The interpretative dispute here involves a difference in point of reference:  the statutory text which MSP Recovery views as revealing a legislative choice, United Auto mischaracterizes as "inaction by Congress."  UAB at 31.  Given that Congress was creating a federal cause of action to facilitate the recoupment of federal monies from primary payers, it is far more likely that it intended to create the broad remedial mechanism it drew in § 1395y(b)(3)(A) than one that could be tangled up in an array of state law and private contractual pre-suit requirements.  Not even the federal claims-filing provision which Congress subsequently added, *see* IB at 25 (discussing history of § 1395y(b)(2)(B)(vi)), poses a procedural limitation on the federal causes of action.  *Kingsway*, 950 F.3d at 773; IB at 49-50.  It would be incongruous if state procedural requirements, which themselves could vary widely among states, could impede the federal causes of action that were enacted as a means of facilitating, not obstructing, Medicare reimbursement.

As MSP Recovery pointed out (IB at 52), Florida's mandatory pre-suit notice requirement also irreconcilably conflicts with Congress' objective of putting the onus on the primary plan, and not the government or an MAO, to reimburse

Medicare as soon as its demonstrated responsibility arises.[10]  Along those lines, this Court has expressed its view that the MSP Act's "constructive knowledge standard is fully consistent with the intent of the MSP statute, and indeed ***necessary*** ... to fulfill its purpose ... to allocate primary responsibility for the payment of claims to private insurance." *Baxter Int'l*, 345 F.3d at 901 (emphasis added).  Requiring an MAO to provide written pre-suit notice to a primary plan in all instances before filing suit to recover conditional payments would turn Congress' repayment scheme on its head by disincentivizing primary plans from making prompt reimbursement as soon as they know or should know of their obligation, *i.e.*, have constructive knowledge.  *See W. Heritage*, 832 F.3d at 1239 (constructive knowledge is sufficient to trigger reimbursement obligation).  If a suit for reimbursement were conditioned on service of a pre-suit notice and ensuing cure period, primary payers like United Auto could sit back and withhold payment, despite their constructive knowledge of their obligation to pay, until the government or an MAO sends it notice.  Against this practical backdrop, the absence of a pre-suit notice requirement in the federal cause of action meaningfully advances Congress' objective of encouraging primary plans to initiate federal

---

[10] Congress' purpose is evident from several of the MSP Act's provisions and regulations that MSP Recovery addresses.  *See* 42 U.S.C. § 1395y(b)(2)(B)(ii); 42 C.F.R. § 411.22(a); 42 C.F.R. § 411.24(b); *see also* IB at 3-7; 50-52.

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

reimbursement at the earliest stage based solely on their own constructive knowledge.  Mandating written notice by an MAO would render constructive knowledge meaningless and thereby undermine an aim of the secondary payer reimbursement scheme.

United Auto's view that Florida's "pre-suit requirements do not conflict with [the MSP Act's] regulations," because they will not "abrogate" the federal obligation "to make payments when they are due," ignores the reality of how mandatory compliance with Florida law would fundamentally skew Congress' incentive scheme.  UAB at 27-28.  As already discussed, if a primary plan knows that an MAO cannot recoup conditional payments through legal action (or in other words cannot hold the primary plan to its federally mandated repayment obligation) without first sending a written pre-suit notice pursuant to § 627.736(10), Florida Statutes, then any incentive a primary plan would have to make repayments "when they are due," *i.e.,* when constructive knowledge arises, completely dissipates.  *See* UAB at 27.  The reason is because Florida's mandatory pre-suit notice statute, as United Auto concedes, also allows the primary plan an additional thirty days to "cure" its default, *i.e.*, "attempt to resolve the claim," without litigation.  UAB at 27-28; 32-33.

Nor would "the requirements (of notice and a 30-day cure period)" produce "a desirable outcome for Medicare."  UAB at 32-33.  Rather, in a scheme of

33

mandatory compliance with the Florida requirements, a primary plan could ignore its federal *mandate* to make prompt reimbursement upon its constructive knowledge (whether from its contractual obligation, a settlement or judgment), *see* 42 U.S.C. § 1395y(b)(2)(B)(ii), because it would know that an MAO could not enforce that obligation through litigation that carries the risk of double damages without first providing written notice. When, and if, that occurs, the primary plan belatedly and in contravention of its already existing obligation to make prompt payment, could simply pay the reimbursement claim within thirty days and avoid the double-damages penalty that Congress included in the private right of action to "give the reimbursement requirement some teeth." *Tenet*, 918 F.3d at 1316. United Auto's desired view would render this federal law toothless.

Finally, this Court's preemption analysis in *Murphy v. Dulay*, 768 F.3d 1360 (11th Cir. 2014), upon which United Auto relies, does not compel a different conclusion. *See* UAB at 21-22, 32. In *Murphy* this Court concluded that the requirements of the federal HIPAA statute and regulations were consistent with the challenged pre-suit authorization form that Florida's medical malpractice statute required all plaintiffs to sign and thus did not preempt Florida law requiring compliance with the form. *Murphy*, 768 F.3d at 1373-74. That is plainly not the case here. If applicable, Florida's no-fault statute would add numerous other state procedural prerequisites to filing a federal lawsuit that the MSP Act does not

34

envision, thereby frustrating Congress' purpose and objective in creating a private right of action free of procedural hurdles as a means of advancing the fiscal interests of the Medicare Trust Fund through the secondary payer regime.

## **CONCLUSION**

For the foregoing reasons, in *Covington* the summary judgment should be reversed and partial summary judgment entered for MSPA Claims, and in *United Auto*, the summary judgment should be reversed.

Dated:  May 13, 2022

Respectfully submitted,

/s/  Stephen F. Rosenthal

Stephen F. Rosenthal
Fla. Bar No. 131458
Ramon A. Rasco
Fla. Bar No. 617334
Christina H. Martinez
Fla. Bar No. 1029432
**PODHURST ORSECK, P.A.**
SunTrust International Center
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
(305) 358-2800

Frank C. Quesada
Fla. Bar No. 29411
Michael O. Mena
Fla. Bar No. 10664
Charles E. Whorton
Fla. Bar No. 46894
Gino Moreno
Fla. Bar No. 112099
Arlenys Perdomo
Fla. Bar No. 115561
Francesco A. Zincone
Fla. Bar. No. 100096
**MSP RECOVERY LAW FIRM**
2701 S. LeJeune Road, 10th Floor
Coral Gables, FL 33134
(305) 614-2222

35

## **CERTIFICATE OF COMPLIANCE**

Counsel for Appellants hereby certifies that the type style utilized in this brief is 14 point Times New Roman proportionally spaced, and there are 8,051 words in the brief.

*s/     Stephen F. Rosenthal*
Stephen F. Rosenthal

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 13, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*s/     Stephen F. Rosenthal*
Stephen F. Rosenthal
Fla. Bar No. 131458

36